JEFFERY, COUNTY JUDGE v. FRY.

4-9905 249 S. W. 2d 850

Opinion delivered June 16, 1952.

 

*Chas. F. Cole,* for appellant.

*J. J. McCaleb,* for appellee.

WARD, J. Appellant prosecutes this appeal from an order of the chancery court restraining him, as county judge, from proceeding with the construction of a new county jail and extension to the court house.

Appellee filed his petition for a restraining order in which it was in effect alleged: appellant is about to sell bonds of the county to make the construction above mentioned, contending he was authorized to do so by an election held December 11, 1951; and that said election was invalid because (a) less than 20 days notice was given and (b) all orders and notices relative to and preceding the election and also the ballot used at the election should have separated the project into two distinct parts, *viz,* one being the construction of the jail and the other the construction of the extension.

The cause was heard on a stipulation of facts, which are set out below in so far as they are material to the issues presented to us.

1. *Statement of facts.* The county court's order calling the special election on December 11, 1951, was regularly issued more than a year before the next general election; the plans for said improvements were filed in the county clerk's office on November 1, 1951, and they considered the improvements as a single unit although the two parts were physically separated except for a connecting passageway between the two structures; the sheriff issued the election proclamation, posting notices in the several townships of the county as provided by law for more than ten days, and causing a notice to be published in a newspaper of the county five days before the election was held; the proposed improvements consist of a new county jail and the remodeling of an existing

county building [to be used by the county library] which two buildings will be connected as mentioned before with a covered passageway and will have the same heating unit; the related court orders, the said notices and the ballots all designated the improvements as "the construction of a new county jail and extension to court house"; the polls were opened in all townships of the county for holding said election; and the results of the election showed 542 favoring and 341 against the project and approximately the same vote favoring the levy of a building tax.

The conclusion reached by the trial court was apparently based on the sole ground that the ballot was not in the form prescribed by law and failed to sufficiently set forth the proposition to be voted on. To this ground appellee urges the additional ground that the notice of the election should have been given for 20 days.

2. *The form of the ballot.* So far as has been pointed out to us there has been no decision of this court specifying or indicating the proper ballot form in circumstances similar to the ones here, and the only directive is contained in the language found in § 4 of Amendment No. 17 of the Constitution as it is set out in Ark. Stats., 1947. A part of this section reads as follows:

"More than one building or improvement may be embodied in all such proceedings, except that separate plans, specifications and estimates for each building or extension shall be made and filed, and a description of each building sufficient to indicate to the electors with reasonable certainty what building or extension he is voting on, shall appear upon the ballot, beneath which shall appear the words 'For Construction' and 'Against Construction,' after each contemplated improvement, and there shall also appear upon said ballot the words 'For Building Tax' and 'Against Building Tax.' "

The above quoted portion read together with the preceding section of said amendment convinces us that the major purpose of the amendment was to guarantee that the voters might know what the improvements were to

be and what they would cost, so that they would be able to vote intelligently. This information could not be acquired by the voters by merely looking at the ballot, but could be obtained only by examining the plans, specifications and estimates on file in the clerk's office. Here there is no contention that this information was not properly made available. On the other hand the stipulation shows that it was on file, and a blue print of the proposed construction is made a part of the record. It is further agreed that the contemplated improvement was considered as a single unit. This was the unit which the county court decided was needed and which was presented to the voters as such. We cannot imagine that any voter was misled by the ballot form, or that he was deprived of any substantial right by not being allowed to vote piecemeal, because he had the right to vote against the entire proposal. The two projects or buildings are to be physically connected, and served by the same heating unit, and it does no violence to the language of the amendment to consider the entire project as a single unit.

3. *Election notices.* The contention that the election was, at this stage of development, void because less than 20 days notice was given, is not supported by the decisions of this court. In *Whitaker* v. *Mitchell*, 179 Ark. 993, 18 S. W. 2d 1026, where a similar question was raised, the court held adversely to appellee's contention, using this language:

"All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose, but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void."

To the same effect see *Brown* v. *Bradberry, County Judge,* 214 Ark. 937, 218 S. W. 2d 733, where we said:

"A second answer is that procedural directions when viewed retrospectively are not mandatory unless of the essence of what is to be accomplished. Though enforcible by appropriate action taken before the voters have spoken, the participating majority will not (in the absence of fraud) be deprived of the fruits of its victory upon a showing that a ministerial act was overlooked."
Here it appears that notice was given both by posting and by publication, that the polls were open in every township and that a substantial number of votes were cast. Also there is no showing that more people would have voted or a different result reached if the full 20 days notice had been given. This being true the case falls squarely within the rule announced in the *Whitaker* case, *supra,* in these words:

"But the established rule is that the particular form and manner pointed out by the statute for giving notice is not essential. Actual notice to the great body of electors is sufficient. The question in such cases is whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise, to change the result of the election."
The early case of *Wheat* v. *Smith,* 50 Ark. 266, 7 S. W. 161, where the question of notice was considered, the court announced rules also applicable here:

"The courts hold that 'the voice of the people is not to be rejected for a defect or want of notice, if they have in truth been called upon and have spoken.'

"It does not appear that any one was misled or deprived of his privilege of voting his choice through ignorance of the date of the election. The number of votes cast is as great in proportion to the aggregate vote as that ordinarily polled at special elections. No evidence suggesting even that a different result might have been reached was offered."

In addition to what has been said there is another plausible argument, but we are not now holding, that the

notice given here is sufficient. The amendment provides (§ 3) that the election must be held pursuant to the General Election Laws. It is conceded that in general elections there must be 20 days notice as provided by Ark. Stats. § 3-804. But the same section also requires only 10 days for special elections. We are dealing, of course, with a special election. By tracing the history of said § 3-804 we find that it is a part of the General Election Law passed in 1875, Act 34. The evidence in this case shows that the notices were posted for more than 10 days. This was sufficient [under the circumstances here] even though the newspaper publication was for a less time, as was held in the *Wheat* case, *supra*.

For the reasons above given the cause is reversed with directions to dismiss the restraining order.

Justices HOLT, MCFADDIN and GEORGE ROSE SMITH dissent.