KERVIN v. HILLMAN, COUNTY JUDGE.

5-1074

292 S. W. 2d 559

Opinion delivered July 2, 1956.

*Frank W. Wynne*, for appellant.

*Thomas E. Sparks*, for appellee.

PAUL WARD, Associate Justice. By procedure not here questioned a special election was held in Dallas County on November 22, 1955, on the questions of acquisition of sites for and the construction of a hospital unit, and on the question of a tax of three mills to pay for the same. The main hospital was to be located in Fordyce, the county seat, "with emergency units thereof in Sparkman and Carthage." It was estimated that the tax would support a bond issue in the amount of approximately $204,000 which was to be supplemented by federal funds in approximately the amount of $266,666, making a total of $470,666. The ballots furnished to the voters contained the above information. The results of the election were 1,680 votes in favor of the hospital and

emergency units and 452 votes against them, and 1,665 votes in favor of the tax and 459 votes against the tax.

After the Quorum Court had levied the special tax on the assessed value of all taxable property in Dallas County for the years 1956 to 1976 inclusive, appellant, M. B. Kervin, a property owner and taxpayer in Dallas County, filed this suit in chancery court to restrain the County Judge from proceeding further in the sale of said bonds and to restrain the collector from proceeding further with the collection of said tax. It was alleged that "said emergency units are not complete hospitals but are small units each providing two beds designed for and intended to meet immediate and emergency temporary needs only for first aid treatment for their respective geographical areas, these geographical areas being some distance from the hospital at Fordyce, and that said patients receiving first aid treatment in these small units will either be discharged or prepared by such treatment for admission to the hospital at Fordyce."

The only ground alleged in the complaint, or relied on here by appellant, for the relief sought is that Amendment 17 to the Constitution of the State of Arkansas (as amended by Amendment 25) "contemplates the construction of a single hospital unit to be located at the county seat and does not contemplate or authorize the construction of such emergency units" located at points other than the county seat.

To the above noted complaint appellees filed a demurrer which was sustained by the trial court. Upon appellant's failure to plead further his complaint was dismissed.

We hold that the trial court was correct in sustaining appellees' demurrer and in dismissing appellant's complaint. The first section of Amendment 17 (as amended) vests in the qualified electors of each county the authority, by a majority vote, to construct a county hospital in the manner here undertaken. Ark. Stats. § 17-905 provides that: "The court shall designate the place whereon to erect any county building on any land be-

longing to the county at the established seat of justice thereof." As a guide for the construction of a constitutional amendment, appellant refers us to 16 C. J. S. 56, Constitutional Law, Sec. 19. The gist of the stated rule is: "If the language is clear and unambiguous its meaning and intent are to be ascertained from the instrument itself by construing the language as it is written.

Based upon the above rules of construction, and applying a rather strict interpretation, appellant argues that by the language used in Amendment 17 (as amended) the framers did not intend that several hospitals or several partial hospitals would be built in different parts of a county, but that only one county hospital was intended.

We think appellant's argument is not supported by reason or by the former decisions of this court, and we think his conclusion cannot be logically drawn from the language used in said amendment.

It is obvious that the real purpose of Amendment 17 (as amended) was to make it possible for a county to provide hospital facilities for its citizens. It is not to be expected that the amendment would go further and specify in detail how this purpose was to be achieved. In the case of *Garner* v. *Lowery,* 221 Ark. 571, 254 S. W. 2d 680, this court, in deciding that Garland County had the power to *purchase* an existing hospital even though Amendment 17 only provides for the *construction* of a hospital, said: "The legislative intent was evidently directed to the fact of acquisition rather than to the method by which that result might be reached." In the case of *Bond, County Judge* v. *Kennedy,* 213 Ark. 758, 212 S. W. 2d 336, this court construed Ark. Stats. § 17-905 mentioned above in its relation to Amendment 17 (as amended) and held that a hospital need not be located at the seat of justice.

Likewise, and based on the above reasoning, we do not think a proper interpretation of Amendment 17 (as amended) forbids the construction of the two emergen-

cy units. Again this is the method selected by popular vote to carry out the purpose of furnishing hospital facilities, and it constitutes a detail not expected to be provided for in a constitutional amendment. Moreover Section 4 of said amendment provides that "more than one building or improvement may be embodied in such proceeding . . ." In the case of *Jeffery* v. *Fry,* 220 Ark. 738, 249 S. W. 2d 850, we construed Amendment 17 (as amended) to authorize an election for the construction of a new county jail and an extension to the courthouse.

The construction which we here give to Amendment 17 (as amended) is we think, fully supported by other decisions of this court. In *Bailey, Lieutenant-Governor* v. *Abington,* 201 Ark. 1072, 148 S. W. 2d 176, we said: "The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. The court, therefore, should constantly keep in mind the object sought to be accomplished by its adoption . . ." We also said, in *Walton* v. *Ark. Construction Commission,* 190 Ark. 775, 80 S. W. 2d 927, that: "It must always be the purpose to construe or apply any provision of the Constitution to effectuate, as nearly as possible, the intent of the people as it may be interpreted from the measure, and, when necessary for that purpose, a liberal interpretation will be warranted."

In our opinion, not only does the construction of the hospital and emergency units in this case fall within the intent and purpose of said constitutional amendment but this arrangement apparently effectuates this intent and purpose in an excellent manner.

Affirmed.