STATE of Arkansas *v.* Clay OLDNER

04-995 206 S.W.3d 818

Supreme Court of Arkansas
Opinion delivered April 7, 2005

320

*Thomas B. Deen*, for appellant.

*Bill Bristow* and *B. Kenneth Johnson*, for appellee.

Donald L. Corbin, Justice. The instant appeal presents the issue of what constitutes an "infamous crime" for purposes of removing an elected official from public office. Appellant, the State of Arkansas, through the prosecuting attorney for the Tenth Judicial District, argues that an infamous crime is one involving dishonesty or deceit and is not limited to those crimes punishable by more than one year's imprisonment. This is an issue not previously addressed by this court. Because this appeal presents an issue of first impression, as well as an issue involving the interpretation of the Arkansas Constitution, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and (b)(1). We reverse and remand.

The facts leading up to the present removal action began when Appellee Clay Oldner, Mayor of Dumas, was charged by information on October 1, 2002, with theft of property, public record tampering, abuse of office, and witness tampering. An amended information filed on March 10, 2003, added a count of income tax evasion and a count of failure to file an income tax return.

Oldner was tried before a jury on October 24, 2003. He was convicted of one count of witness tampering, a Class A misdemeanor, in violation of Ark. Code Ann. § 5-53-110 (Repl. 1997). The evidence supporting that conviction was that Oldner asked two city employees, Janice Young and Sherri Flippo, to lie concerning the disposition of certain household goods purchased with city funds. Specifically, Oldner asked the employees to state that the property was in the city's possession. Oldner was also convicted of one count of abuse of office, a Class B misdemeanor, in violation of Ark. Code Ann. § 5-52-107 (Repl. 1997), for misappropriating $1,750.00 in city funds for the paving of private property owned by Oldner's family. A mistrial was declared with regard to the felony charges of theft of property and public record tampering. Oldner was fined $300.00, ordered to pay restitution to the City of Dumas in the amount of $1,750.00, and assessed court costs of $150.00. He did not appeal his convictions and judgment.

On November 7, 2003, the State filed a petition seeking to remove Oldner from the office of Mayor. In its petition, the State averred that Oldner had been convicted of infamous crimes that warranted his removal from office pursuant to Article 5, Section 9, of the Arkansas Constitution. According to the State's petition, the term infamous crime as used in the Constitution includes felonies and any misdemeanors that involve deceitfulness, untruthfulness, or falsification.

On December 1, 2003, Oldner filed a response to the removal petition, arguing that he was not convicted of infamous crimes, because neither of his misdemeanor convictions was punishable by more than a year's imprisonment. Oldner also argued that he could not be removed from office because his actions took place in a prior term of office and the electorate chose to reelect him despite the charges.

On December 11, 2003, while the removal petition was pending, the State filed a second amended information against Oldner on the felony charges of theft of property and public record tampering. Thereafter, on January 8, 2004, the State filed a motion requesting a hearing for Oldner to show cause as to why he should not be removed from office. The circuit court originally scheduled a hearing for April 6, 2004, but upon learning that a new criminal action had been filed, the circuit court *sua sponte* continued the April 6 hearing until the criminal matter filed against Oldner was resolved. An order reflecting the continuance was then entered on February 27, 2004.

The State requested the circuit court to reconsider the continuance, and after the trial court declined to do so, the State filed a petition for writ of mandamus on March 12, 2004, requesting this court to compel the circuit court to timely render a decision on the pending petition for removal. *See State v. Vittitow*, 358 Ark. 98, 186 S.W.3d 237 (2004). This court denied the petition, ruling that the State had failed to establish that it had a clear and certain right to the relief sought.

A hearing on the removal petition was ultimately held on June 15, 2004. Each side agreed that the issue to be decided was one of law and, thus, the trial court could decide the matter without further hearings or evidence. The State argued that Oldner had been convicted of infamous crimes because his crimes involved dishonesty and deceit. Oldner countered that he was not convicted of infamous crimes because he was not subject to punishment in excess of one year's imprisonment. The trial court took the matter under advisement and issued a letter order on July 6, 2004, denying the State's petition for removal. According to the circuit court, an infamous crime is one that is punishable by more than a year's imprisonment. A judgment reflecting the trial court's finding was subsequently entered on August 4, 2004. This appeal followed.

On appeal, the State argues that the trial court erred in denying its petition to remove Oldner as Mayor of Dumas on the

basis that his convictions were not punishable by more than a year in prison. According to the State, a person is ineligible to hold public office following a conviction for any felony or infamous crime. The State further argues that infamous crime as used in Article 5, Section 9, of the Arkansas Constitution includes any felony or any misdemeanor that involves deceitfulness, untruthfulness or falsification.[1] Oldner counters that infamous crime should be interpreted in a manner consistent with the Fifth Amendment of the United States Constitution, meaning that a crime is infamous if it is punishable by more than one year's imprisonment. We agree with the State.

Article 5, Section 9, of the Arkansas Constitution provides:

> No person hereafter convicted of embezzlement of public money, bribery, forgery, or other infamous crime, shall be eligible to the General Assembly or capable of holding any office or trust or profit in this State.

Arkansas courts have consistently recognized that a person convicted of a felony or one of the specifically enumerated offenses is disqualified from holding public office under this section. *See Campbell v. State*, 300 Ark. 570, 781 S.W.2d 14 (1989); *Reaves v. Jones*, 257 Ark. 210, 515 S.W.2d 201 (1974); *Ridgeway v. Catlett*, 238 Ark. 323, 379 S.W.2d 277 (1964). In *State v. Irby*, 190 Ark. 786, 795-96, 81 S.W.2d 419, 423 (1935) (quoting *State ex rel. Olson v. Langer*, 256 N.W. 377, 386 (1934)), this court further recognized that "[t]he presumption is, that one rendered infamous

---

[1] In support of its argument, the State, in part, relies on previously issued opinions of the Attorney General considering the issue. In Op. Att'y Gen. # 94-106, the Attorney General analyzed whether a sheriff who had pled guilty to a misdemeanor charge stemming from allegations that he violated the civil rights of a mentally retarded person was eligible to again run for the office of sheriff. The Attorney General ultimately opined that Article 5, Section 9, renders ineligible any person convicted of a misdemeanor if it is one that involves deceitfulness, untruthfulness, or falsification because such misdemeanors constitute infamous crimes. In reaching this conclusion, the Attorney General described *crimen falsi* as "crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense which involves some element of deceitfulness, untruthfulness, or falsification bearing on a witness' propensity to testify truthfully." (Citing *Black's Law Dictionary* 335 (5th ed. 1979)). *See also* Op. Att'y Gen. # 2002-098 and # 2004-215. The State admits, however, that opinions of the Attorney General are not binding on this court. *See, e.g., Arkansas Prof'l Bail Bondsman Lic. Bd. v. Oudin*, 348 Ark. 48, 69 S.W.3d 855 (2002).

by conviction of felony, or other base offense, indicative of great moral turpitude, is unfit to exercise the privilege of suffrage, or to hold office, upon terms of equality with freemen who are clothed by the State with the toga of political citizenship."

■ While in *Irby* this court spoke of offenses involving moral turpitude, the precise issue of what constitutes an infamous crime disqualifying a person from holding public office has heretofore not been addressed by this court. Before turning to the merits of this issue, this court must review its rules of interpretation. This court recently set forth the appropriate standard of review in cases involves interpretation of a constitutional provision:

> When interpreting the constitution on appeal, our task is to read the laws as they are written, and interpret them in accordance with established principles of constitutional construction. *Brewer v. Fergus*, 348 Ark. 577, 79 S.W.3d 831 (2002). It is this court's responsibility to decide what a constitutional provision means, and we will review a lower court's construction *de novo*. *Id*. We are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id*. Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000); *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998). Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Daniel v. Jones*, (quoting *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 108, 901 S.W.2d 809, 810 (1995)).

*Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.*, 353 Ark. 701, 720, 120 S.W.3d 525, 537 (2003).

■ Remaining mindful of this standard, we turn to the issue now before us. The plain language of Article 5, Section 9, specifically disqualifies a person from holding public office if convicted of the crimes of embezzlement of public money, bribery, or forgery. Also disqualified is any person convicted of an infamous crime. Infamous crime, however, is not further explained or defined in that provision. According to the State, each of these crimes share the common elements of dishonesty and

deception. Those crimes specifically listed are then followed by the phrase infamous crime. This court has recognized that pursuant to the doctrine of *ejusdem generis*, when general words follow specific words in a statutory enumeration the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Hanley v. Arkansas State Claims Comm'n*, 333 Ark. 159, 970 S.W.2d 198 (1998); *McKinney v. Robbins*, 319 Ark. 596, 892 S.W.2d 502 (1995). Likewise, the doctrine of *noscitur a sociis*, which literally translates to "it is known from its associates," provides that a word can be defined by the words accompanying it. *Hanley*, 333 Ark. 159, 970 S.W.2d 198; *Boston v. State*, 330 Ark. 99, 952 S.W.2d 671 (1997).

■ Thus, applying these rules of interpretation, it can be said that the framers in drafting Article 5, Section 9, intended that an infamous crime be one involving elements of deceit and dishonesty. This approach was followed by the California Supreme Court in *Otsuka v. Hite*, 414 P.2d 412 (Cal. 1966), in which the court concluded that the term infamous crime should be deemed to refer to offenses evidencing moral corruption and dishonesty.

Other jurisdictions have also addressed the issue of what constitutes an infamous crime for purposes of removing a person from public office. Notably, Pennsylvania, in *Commonwealth ex rel. Baldwin v. Richard*, 561 Pa. 489, 751 A.2d 647 (2000), held that a city councilman convicted of unlawful restraint, terroristic threatening, carrying firearms without a license, possession of an instrument of a crime, and recklessly endangering another person after holding his former girlfriend at gunpoint for three hours was not disqualified from holding public office. In so ruling, the Pennsylvania Supreme Court found that none of the councilman's convictions involved a felony, a *crimen falsi*, or a likewise offense involving the charge of a falsehood that affected the public administration of justice.

■ Oldner argues that this case is inapplicable, because in Pennsylvania some misdemeanors may be punished by imprisonment of up to five years. This fact is irrelevant, however, in light of the court's analysis of the issue. Simply put, the Pennsylvania Supreme Court did not focus on the available punishment, but rather focused on the nature of the crimes.

Here, in order to interpret infamous crime in the manner espoused by Oldner, the court would be required to focus solely

on the punishment applicable to the crime and ignore the nature of the crime itself. Oldner argues that this is appropriate, as the modern historical view of what constitutes an infamous crime focuses on the available punishment. In fact, the note following 22 C.J.S. *Criminal Law* § 6 (1989), which discusses infamous crime states in relevant part:

> An "infamous" crime or offense is one which works infamy in the person who commits it, subjecting the offender to an infamous punishment; one which rises at least to the grade of felony. . . .

> The question of whether a crime is infamous is determined by the nature of the punishment, and not by the character of the crime, and any crime is infamous that is punishable by death or by imprisonment, in a state prison, or by the loss of civil or political privileges. The decision turns not on the punishment actually inflicted, but on the punishment which the court is authorized to impose.

*Id.* at p. 6 (footnotes omitted).

Appellee also relies on several federal cases which have interpreted an infamous crime consistent with the historical context that a crime is infamous if it is punishable by imprisonment of more than one year. Specifically, Oldner relies on federal case law interpreting the Fifth Amendment's indictment requirement, such as the Eighth Circuit Court of Appeals' decision in *United States v. Russell*, 585 F.2d 368 (8th Cir. 1978). In that case, Russell was convicted of two misdemeanor counts of failing to file federal income tax returns. On appeal, he argued that the charges against him should have been dismissed because the government failed to proceed against him by indictment. The Eighth Circuit rejected his argument, noting that for purposes of the Fifth Amendment, Russell had not been charged with an "infamous crime" because the available punishment was no more than one year's imprisonment.

■■ While Oldner's argument might seem persuasive at first blush, it ignores the fact that the notion that the punishment is what made a crime infamous was first recognized by the United States Supreme Court in *Ex parte Wilson*, 114 U.S. 417 (1885). This is significant because the Supreme Court's decision in *Wilson* was handed down more than a decade after our most recent Constitution was drafted. Thus, the punishment-based definition of infa-

mous crime was not the commonly recognized definition at the time the drafters included the term infamous crime in Article 5, Section 9. This court has recognized that in interpreting a constitutional amendment, it may be helpful to consider the history of the times and conditions existing at the time of adoption. *Brewer v. Fergus*, 348 Ark. 577, 79 S.W.3d 831 (2002); *Bryant v. English*, 311 Ark. 187, 843 S.W.2d 308 (1992). Thus, when the drafters used the term infamous crime it was not common to view a crime as infamous based on the available punishment; rather, a crime was considered infamous based on the underlying nature of that crime.

■ In addition, the distinction of imprisonment for more than a year is understandable in the federal context because it provides an absolute end point for when an accused may be charged by information rather than through a grand jury indictment. However, no such logical distinction can be found when this scenario is applied in the context of qualification to hold office. It is simply nonsensical to conclude that a person convicted of a crime with a maximum punishment of up to one year's imprisonment will not be disqualified from holding office, while an official convicted of a crime with an available punishment of more than one year's imprisonment is disqualified. In short, interpreting infamous crime in the arbitrary manner suggested by Oldner would lead to an absurd result. Just as we will not interpret statutory provisions so as to reach an absurd result, neither will we interpret a constitutional provision in such a manner. *See e.g., Green v. Mills*, 339 Ark. 200, 4 S.W.3d 493 (1999).

■ Our position is further supported by a review of applicable treatises. The distinctions that may be drawn between various types of infamous crimes was discussed in 21 AM. JUR. 2D *Criminal Law* § 24 (1998), which states in relevant part:

> The meaning of the term "infamous crime" may vary according to the context in which it arises. Thus, for the purposes of the Fifth Amendment provision that no person may be held to answer for a capital or otherwise infamous crime unless on presentment or indictment by a grand jury, an infamous crime is one punishable by imprisonment in a penitentiary for a term of over one year. A similar definition has been adopted for the purpose of a state constitutional provision disenfranchising persons convicted of infamous crimes. But in this and other contexts, the term has also been defined as including offenses which involve deceit, or which by their

nature tend to cast doubt upon the offender's truthfulness or personal integrity. Thus, for the purposes of a rule permitting impeachment of a witness on the basis of his or her conviction of an "infamous crime," the term has been deemed to include treason, crimes that were common-law felonies, and other "crimen falsi" offenses such as perjury, false statement, criminal fraud, embezzlement, false pretense, or any other offense involving some element of deceitfulness, untruthfulness, or falsification bearing on a witness's propensity to testify truthfully.

*Id.* at 139–40 (footnotes omitted).

 As Professor LaFave points out in his treatise, whether a particular crime is to be considered infamous or not may depend, on a large extent, on the purpose for which the distinction is to be made. *See* Wayne R. LaFave, *Substantive Criminal Law*, § 1.6(d) (2d ed. 2003). Professor LaFave further explains that:

Where the purpose was in former times to render a witness incompetent (or today to authorize the impeachment of the witness), the term "infamous" properly has reference to those crimes involving fraud or dishonesty or the obstruction of justice (sometimes called *crimen falsi*). Where the term is used in connection with disbarment or disqualification to hold office, vote or serve on a jury, it generally has a similar meaning.

*Id.* at p. 57 (footnote omitted). Ultimately, Professor LaFave distinguishes the above-enumerated situations from those related to constitutional provisions relating to indictment.

 Moreover, there is little support, other than the above-discussed federal cases discussing indictments that supports Oldner's suggestion that an infamous crime is one punishable by more than a year's imprisonment. In fact, Oldner's argument ignores certain distinctions previously recognized in prior versions of Arkansas's Constitutions. The Constitution of 1836 provided that "all persons convicted of bribery, perjury or other infamous crime" were excluded from holding public office and denied the right of suffrage. *See* Ark. Const. 1836, art. 4, § 12. Similar provisions were also included in the Constitutions of 1861 and 1864. Then, in 1868, the Constitution was amended to provide that a person convicted of treason, embezzlement of public funds, malfeasance in office, crimes punishable by imprisonment, or

bribery was disqualified from voting or holding public office. However, when Arkansas was readmitted to the Union after the adoption of the 1868 Constitution, Congress required that the Constitution disqualify from voting only those who had been convicted of crimes that were considered to be felonies. This provision was further revised in 1873 when a revised Article 8 further restricted the disqualification on voting or holding public office to persons convicted of "any crime punishable by law with death or confinement in the penitentiary." Ark. Const. 1868, art. 8, § 1 (1873). It was not until 1874 that the requirement that a person be free from any conviction for "embezzlement of public money, bribery, forgery or other infamous crime" first appeared in our Constitution. *See* Ark. Const. 1874, art. 5, § 9. Considering the specific changes that have occurred in our various constitutional provisions, it is apparent that if the drafters of Article 5, Section 9, had intended to limit an infamous crime to one punishable by imprisonment, they would have so specified. Their failure to do so supports the conclusion that an infamous crime is not limited to those crimes with punishments exceeding one year's imprisonment.

■ Additionally, this court has recognized a distinction between felonies, which in Arkansas are punishable by more than a year's imprisonment, and infamous crimes in the context of attorney-discipline cases. Rule X of the Rules of the Court Regulating Professional Conduct of Attorneys at Law, 260 Ark. 910 (1976), was adopted by *per curiam* order on June 21, 1976. That rule allowed the Committee to file a complaint where the conduct in question consisted of either a felony or an infamous crime. *See also Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994). Thus, this court in adopting the attorney-discipline rules drew a clear distinction between felonies and infamous crimes.

In sum, our case law has recognized that an "infamous crime" is a distinct entity. It has never considered it to be synonymous with the term felony or required a punishment that exceeds imprisonment of one year. There is no support that the drafters of Article 5, Section 9, intended the term to be so narrowly construed, particularly in light of the fact that it is preceded by crimes specifically implicating elements of dishonesty or untruthfulness.

■ In the instant case, the offenses that Oldner was convicted of, abuse of office and witness tampering, are of a type

that directly impact his moral integrity because they are crimes involving dishonesty and deceit. With regard to the offense of witness tampering, Oldner requested that two city employees fabricate testimony in order to cover up alleged wrongdoing on his part. As for the crime of abuse of office, Older used his position as Mayor for his own pecuniary gain by using city funds to pave a parking lot on property owned by his family. Not only do these crimes involve dishonesty and deceit but, more importantly, they directly impact Oldner's ability to serve as an elected public official. In *Campbell*, 300 Ark. 570, 577, 781 S.W.2d 14, 18, this court recognized the effect of criminal convictions on the status of a public office and stated:

> [W]e interpret art. 5, § 9 to mean that a public official becomes subject to removal when convicted by a plea of guilty or a verdict of guilty in circuit court of a crime defined by the article. Anything less, we believe, effectively nullifies the provision. We recognize the potential for harm to which this interpretation gives sufferance. However, the risk of harm to an individual must be balanced against the alternative — the loss of public confidence in those who govern which inevitably accompanies the spectacle of office holders who have been found guilty of an offense which disqualifies them for public trust, yet continue to hold the office by resorting to the endless delays to which the criminal justice system is now susceptible.

The integrity of the office of Mayor would be impugned by allowing Oldner to remain in that office. We believe it is this type of situation that the drafters of our Constitution sought to prevent through inclusion of the term "infamous crime" in Article 5, Section 9. For these reasons, the order of the trial court denying the State's petition to remove Oldner as Mayor of Dumas is reversed.

The State raises an alternative argument that Oldner's conviction for abuse of office constitutes the crime of embezzlement of public money as specifically enumerated in Article 5, Section 9. Having determined that Oldner's misdemeanor convictions constitute infamous crimes, it is unnecessary for us to address this argument.

Finally, Oldner argues that he cannot be now removed from the office of Mayor because his convictions resulted from acts committed in his previous term of office and despite the pending

charges, the electorate voted for him to remain as mayor. This argument is wholly without merit.

█ It is the fact of conviction that disqualifies a person from holding public office under the authority of *Ridgeway*, 238 Ark. 323, 379 S.W.2d 277. *See May v. Edwards*, 258 Ark. 871, 529 S.W.2d 647 (1975). Moreover, this type of disqualification cannot even be removed by pardon. *Id.*; *see also Irby*, 190 Ark. 786, 81 S.W.2d 419. The court in *May*, 258 Ark. 871, 529 S.W.2d 647, further explained that the reason a person who has been convicted of an infamous crime is prevented from taking office is because he is thereby rendered ineligible just as he would be if he did not possess other qualifications required by law.

█ Here, the fact that Oldner was reelected Mayor after the charges were filed against him is irrelevant. Oldner's convictions of infamous crimes disqualify him from holding public office. This is not a disqualification that can be overcome by the will of the electorate. Simply put, he remains ineligible for holding public office in perpetuity. *See Allen v. State*, 327 Ark. 350, 366-A, 939 S.W.2d 270 (1997) (supplemental opinion denying rehearing).

Reversed and remanded.