The Honorable Donna Hutchinson State Representative
24 Rillington Drive Bella Vista, Arkansas 72714-3204
Dear Representative Hutchinson:
This is in response to your request for an opinion on whether, under Amendment 79, an older or disabled person's homestead assessment may rise when newly discovered property is added to the assessment.
Amendment 79 to our state constitution generally limits how fast a property tax assessment may rise, but the limits do not apply to "newly discovered real property, new construction, or . . . substantial improvements to real property." Ark. Const. amend. 79, § 1(b), (c).
The amendment also provides that a homestead assessment generally cannot rise at all if the taxpayer is 65 or older, or disabled. By its structure and terms, the freeze does not prevent an assessment increase when a new residence is constructed on the assessed property. See Ark. Const. amend. 79, § 1(d)(1)(A). While the freeze contains an exception for "substantial improvements to real property," there is no exception expressed for newly discovered property. Ark. Const. amend. 79, § 1(d)(1), (4).
While the answer to your question is not entirely clear, it is my opinion that an older or disabled person's homestead assessment may rise when newly discovered property is added to the assessment. *Page 2 
The same rules are used to interpret statutes and the constitution.See, e.g., Gazaway v. Greene County Equalization Bd.,314 Ark. 569, 864 S.W.2d 233 (1993). The common aim of the rules of interpretation is to find and give effect to the intent of those who drafted and enacted the provision at issue. See, e.g., Kervin v.Hillman, 226 Ark. 708, 292 S.W.2d 559 (1956); see also City ofFayetteville v. Washington County,369 Ark. 455, 255 S.W.3d 844 (2007). Plain and unambiguous language is generally given its obvious and common meaning. See, e.g.,State v. Oldner, 361 Ark. 316, 206 S.W.3d 818 (2005). Another rule of interpretation is expressio unius est exclusioalterius, which means that the expression of one thing may be interpreted to be the exclusion of another thing. See, e.g.,id.
Applying these rules might lead one to conclude that an older or disabled person's homestead assessment cannot rise with property's discovery. The reasoning might be as follows: The constitution freezes homestead assessments for older and disabled people, and caps other assessments' growth rates. The freeze has two exceptions (new construction and substantial improvements), while the caps have three exceptions (newly discovered property, new construction, and substantial improvements). The caps' newly-discovered-property exception is proof that the General Assembly, which drafted Amendment 79, knew that property is sometimes discovered and added to an assessment. But the General Assembly provided no such express exception to the freeze. The intent of the drafters and the voters therefore must have been to disallow an increase in a frozen assessment even though property is discovered and added.
In my opinion, however, that is a mechanical, ill-considered analysis that ignores both Amendment 79's readily apparent ambiguities and a persuasive interpretation of the provision by an agency responsible for its execution. Prohibiting an assessment increase when property is discovered and added would also lead to absurd and unjust results, and elevate the law's letter over its spirit.
The language of Amendment 79 is unquestionably ambiguous in several respects. It provides, for example, that "[t]his subsection (d) [i.e., the freeze] does not apply to substantial improvements to real property." Ark. Const. amend. 79, § 1(d)(4). Taken literally, the language means that the portion of an older or disabled person's homestead assessment that is attributable to "substantial improvements" is not frozen. In other words, the assessment would be frozen in part, with respect to the part of the homestead not substantially improved, while the part of the *Page 3 
assessment representing the value of the substantial improvements could increase with every reappraisal. I do not believe this interpretation is what was intended. Rather, I am of the opinion that the exception means that an assessment is not frozen at its pre-improvement level, but rather increased to account for the substantial improvements, then again frozen at the new level.
Another example of the internal ambiguities that characterize Amendment 79 is illustrated by Op. Att'y Gen. 2008-068 and 2004-300, in which I, and a predecessor in this office, respectively, concluded that the language of the amendment is so ambiguous that it is impossible to provide definitive answers to questions about the caps' operation when property is sold.
The omission from the freeze's language of the phrase "newly discovered real property," the issue here, creates yet another ambiguity.
Particularly where a provision is ambiguous, its interpretation by an agency charged with its administration and execution is "highly persuasive" and not reversed by the courts unless "clearly wrong."Citifinancial Retail Servs. Div. of Citicorp Trust Bank, FSB v.Weiss, 372 Ark. 128, 134, 271 S.W.3d 494 (2008); seealso, e.g., Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999). Here, the state's Assessment Coordination Department, which, among other things, provides guidance to local assessors and equalization boards, has interpreted the freeze not to prohibit the assessment of newly discovered property at full value. See Assessor's Guide 32 (3rd ed. 2009).
A mechanical application of the rules of statutory and constitutional construction referred to above would lead to absurd and unjust results. Consider two older homeowners living next-door to one another in substantially identical tract houses on substantially identical lots. One's assessment includes all homestead property while the other's omits the large back porch (a feature of both houses), significantly lowering the owner's tax bill. In my opinion, permanent continuation of the tax break, after the assessor's discovery of the error, would be unjust and absurd. The result would be that much more unjust and absurd if the assessor's omission of the porch was the result of fraud, but it is not clear whether or how, under a mechanistic, literal interpretation of the freeze, there could be any remedy for such a fraud. I do not believe a court would interpret Amendment 79 to permit that result. *Page 4 
In cases like this, the Supreme Court of Arkansas gives effect to the constitution's underlying spirit even where "the true intention, though obvious, has not been expressed by the language employed when given its literal meaning. . . ." Berry v. Gordon,237 Ark. 547, 558, 376 S.W.2d 279 (1964). Particularly where "adherence to the letter would result in absurdity or injustice," "the reason, spirit, and intention of the . . . Constitutional provision shall prevail over its letter. . . ." Id.; seealso, e.g., State v. Oldner, supra (avoidance of absurd result). If necessary to effectuate the true intent, "courts must restrict, modify, enlarge, and/or transpose the expressed terms." Berry,supra, at 558. "The basic spirit of the constitution is to be considered along with its literal meaning and may even prevail where a conflict exists." Gipson v. Maner, Judge,225 Ark. 976, 980, 287 S.W.2d 467 (1956) (citing Bailey v.Abington, 201 Ark. 1072, 148 S.W.2d 176 (1941)). So inBailey, for example, the court held that the constitution's plain language, requiring determination by lot of senators' terms after "any apportionment" following a federal census, was inconsistent with its spirit and would not be given effect when the apportionment was identical to the one prevailing prior to the census.
The court has also stated that "expressio unius est exclusioalterius is not to be applied with the same rigor in construing a State constitution as a statute. . . ." State v. Martin,60 Ark. 343, 355, 30 S.W. 421 (1895). Thus in Stanley v.Gates, 179 Ark. 886, 19 S.W.2d 1000 (1929), the court held that the expressio rule does not preclude a tax's imposition merely because it is not named in a list of taxes constitutionally authorized, the list being held to be illustrative rather than exclusive. Here, Amendment 79's expression of an exception for substantial improvements could be regarded as illustrative rather than exclusive, thus permitting additional exceptions that are within the spirit of the amendment.
While a court will not "arbitrarily supply words merely to give the effect . . . lawmakers might have intended . . . courts can supply obvious omissions, in order to carry out the legislative intent." Snowden v. Thompson,106 Ark. 517, 522, 153 S.W. 823 (1913). Thus in Graves v.Burns, 194 Ark. 177, 106 S.W.2d 602 (1937), the court stated that a phrase's appearance in another section of the same law was evidence that the phrase had been inadvertently omitted from the section at issue. Here, a court should hold that the presence of an exception to the caps for newly discovered property is evidence of the inadvertent omission of a similar exception to the freeze. *Page 5 
Ambiguity or doubt that arises in construing a law that imposes a tax is resolved in favor of the taxpayer. See, e.g., Williams v.Wayne Farms, LLC, 368 Ark. 93, 243 S.W.3d 316 (2006). But "[t]ax exemptions are strictly construed against the exemption, and a strong presumption operates in favor of the taxing power. In strictly construing tax exemptions, this court has said that `to doubt is to deny the exemption.'" Citifinancial,372 Ark. at 133 (citations omitted). Accordingly, inCitifinancial, a case where the amount at issue was not owed by any taxpayer at all, the court nonetheless denied a refund to the party who had borne the tax's economic burden. In the case considered here, a court should strictly construe the freeze provisions against a taxpayer whose assessment was not accurate when the freeze took effect.
Amendment 79 was adopted to mitigate the effects of substantial increases in assessments and taxes that were expected to arise from newly mandated statewide reappraisals. See Thiel v. Priest,342 Ark. 292, 28 S.W.3d 296 (2000). The reappraisals were required in order to correct long-standing and widespread errors, undervaluations, and regional disparities in appraisals and assessments. See generally Act 1185 of 1999. Uniformity in appraisal and assessment was thus a stated goal of the statewide reappraisals that in turn led to Amendment 79's adoption. Seeid. In my opinion, the spirit animating Amendment 79 will prompt courts to interpret it in a way that provides property tax relief in a fair, uniform, and rational manner, not in a way that arbitrarily favors one taxpayer over another similarly situated taxpayer and may create conflicts with other constitutional provisions.See, e.g., Ark. Const. art. 2, § 3 ("The equality of all persons before the law is recognized, and shall ever remain inviolate. . . .").
An assessment increase caused by adding newly discovered property is not an increase that arises from the correction of the sort of error or condition that inspired the General Assembly to mandate statewide appraisals. Mitigation or prohibition of such an increase is therefore not within the spirit or purpose of Amendment 79. Instead, an assessment increase caused by adding newly discovered property occurs because the property's true nature and extent have at last been discovered, and an error has been corrected, exactly the sort of condition sought to be corrected through the reappraisal mandate.
I do not take the omission of a few words from the freeze's language as evidence of an intent to extend permanent tax breaks on the basis of inaccurate assessments, particularly where such an intent would be inconsistent with the spirit of the *Page 6 
constitution. While Amendment 79's language prevents an unequivocal conclusion, it is my opinion that Amendment 79 permits an older or disabled person's homestead assessment to rise when newly discovered property is added.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1