Larry Dickerson, Executive Secretary Arkansas State Highway Employees Retirement System Post Office Box 2261 Little Rock, Arkansas 72203
Dear Mr. Dickerson:
You requested my opinion on four questions about amounts payable by the Arkansas State Highway Employees Retirement System (ASHERS).
Subject to stated limitations, ASHERS must pay any qualifying "member who is receiving benefits" at least $125 monthly, in addition to the member's retirement annuity, "to help offset the cost of health insurance and health care. . . ." A.C.A. § 24-5-125(a)(1) (Supp. 2009).
Similarly, and also subject to stated limitations, the Arkansas Teacher Retirement System (ATRS) must pay at least $50[1] monthly in addition to a qualifying ATRS retiree's regular annuity. See
A.C.A. § 24-7-713(b) (Supp. 2009).
ASHERS and ATRS are reciprocal state retirement systems. See
A.C.A. § 24-2-401(3)(A), (3)(B) (Supp. 2009).
You describe a person who entered the ASHERS Deferred Retirement Option Plan (DROP) in 2005, and ended his employment with the Arkansas Highway and Transportation Department (AHTD) and began receiving ASHERS retirement benefits in 2010. He also has five years' "credited contributory service" in ATRS and applied for ATRS retirement benefits effective July 1, 2010. Apparently in anticipation that ATRS will pay the person $75 monthly under A.C.A. § 24-7-713(b), ASHERS has determined to pay him $50 monthly under A.C.A. § 24-5-125, *Page 2 
for an anticipated monthly total of supplemental payments of $125, the minimum amount otherwise required to be paid solely by ASHERS under A.C.A. § 24-5-125.
Your questions are:
 1. Is this employee considered retired from ASHERS at the time he enters the DROP?
 2. When ASHERS calculated the DROP benefit should the $125.00 benefit provided for in A.C.A. § 24-5-125 be reduced by the amount provided by ATRS in A.C.A. § 24-7-713[(b] ?
 3. If the answer to Question 1 and 2 is yes is ATRS required to add the $75.00 to the retiree[']s benefit?
 4. If the answer to Question 3 is no is ASHERS required to add the $75.00 to the benefit upon termination of the employee?
RESPONSE
For the reasons explained below, I am unable to answer your first question. In my opinion, with respect to your second question, ASHERS may prorate its payments under A.C.A. § 24-5-125 to a person also eligible to receive payments under A.C.A. § 24-7-713(b) or pay the full amount otherwise due, but it may not reduce its payments on a dollar-for-dollar offset basis as described in your request. With respect to your third question, it is my opinion that ATRS, if it is in fact liable for them at all, may prorate its payments under A.C.A. § 24-7-713(b) to a person also eligible to receive payments under A.C.A. § 24-5-125 or pay the full amount otherwise due. In my opinion, with respect to your fourth question, ASHERS may not reduce its payments under A.C.A. § 24-5-125 to a person who is not eligible for an additional monthly benefit as a result of credited service under a reciprocal state retirement system.
Question 1 — Is this employee considered retired fromASHERS at the time he enters the DROP?
A person's status under and relationship to a retirement system may vary depending on the context in which the status and relationship are considered. A person participating in a deferred retirement option plan (DROP), for instance, is *Page 3 
obviously not retired within the ordinary meaning of that word because the person, by definition, is deferring retirement and continuing to work. But the person may be deemed retired for other purposes, including, for example, membership on a pension board.See, e.g., Op. Att'y Gen. 2001-014, 1999-439. Likewise a person may be considered retired in relation to one retirement system but not in relation to another. See, e.g., A.C.A. § 24-7-707(a)(1)(B) (Supp. 2009) (ATRS member may be both eligible to receive deferred retirement benefits from ATRS and employed in position covered by another state retirement plan).
Act 1073 of 1997, codified as amended at A.C.A. §§ 24-5-201 to-203 (Repl. 2000, Supp. 2009), authorizes the ASHERS Board of Trustees to establish a DROP and adopt rules governing it. While Act 1073 dictates minimum requirements for any ASHERS DROP (see A.C.A. § 24-5-202(a) (Supp. 2009)), the legislature left it to the ASHERS Board of Trustees to determine whether to adopt a DROP at all, and to specify its additional terms if adopted.
I am unable to answer your first question because I am uncertain about its context and objective. It is not clear how, in the fact situation given, the person's being or not being "retired from ASHERS" in 2005 is determinative of any matter relevant to the parties.[2] Additionally, it is likely that the person's retirement status with respect to ASHERS, to the extent relevant, would be determined or influenced by any DROP rules adopted by the ASHERS Board of Trustees.
Question 2 — When ASHERS calculated the DROP benefit should the$125.00 benefit provided for in A.C.A. § 24-5-125 be reduced by theamount provided by ATRS in A.C.A. § 24-7-713[(b] ?
The statute that provides for the ASHERS monthly health benefit states that the ASHERS Board of Trustees may, in its discretion, prorate payments to a member who retires after June 30, 1999[3], and is "eligible for an additional monthly benefit *Page 4 
as a result of credited service" under a reciprocal state retirement system. A.C.A. § 24-5-125(b), (c)(4).
Statutes should be interpreted to give effect to the legislature's intent. See, e.g., Smith v. Fox,358 Ark. 388, 193 S.W.3d 238 (2004). Legislative intent is normally found by construing the statute "just as it reads, giving the words their ordinary and usually accepted meaning in common language. . . ."Brown v. State, 375 Ark. 499, 502, 292 S.W.3d 288 (2009). Another fundamental rule of statutory interpretation is expressio unius estexclusio alterius, which means that the expression of one thing may be interpreted as the exclusion of another. See, e.g., State v.Oldner, 361 Ark. 316, 206 S.W.3d 818 (2005).
Applying the rules of statutory construction, I conclude that a monthly ATRS payment under A.C.A. § 24-7-713(b) is "an additional monthly benefit as a result of credited service" under a reciprocal system, as referred to in A.C.A. § 24-5-125(b) and (c)(4). Because the statute expressly provides that an ASHERS monthly health benefit payment to a person eligible for such an additional payment may be prorated, it is my opinion that a dollar-for-dollar offset like the one described in your request, not being a pro rata adjustment, [4] is impermissible. Because the statute expressly makes proration discretionary with the ASHERS Board of Trustees, it is my opinion that ASHERS may, alternatively, pay the person the entire amount otherwise due under A.C.A. § 24-5-125.
Question 3 — If the answer to Question 1 and 2 is yes is ATRSrequired to add the $75.00 to the retiree[']s benefit?
The statute that provides for the ATRS monthly supplemental payment states that the ATRS Board of Trustees may prorate payments to persons retiring after June 30, 1999, *Page 5 
who are "eligible for an additional monthly benefit as a result of credited service" under a reciprocal state retirement system. A.C.A. § 24-7-713(b)(3).
Applying the rules of statutory construction described above, I conclude that a monthly ASHERS payment under A.C.A. § 24-5-125 is "an additional monthly benefit as a result of credited service" under a reciprocal system, as referred to in A.C.A. § 24-7-713(b). Accordingly, in my opinion, if ATRS is liable for payments under A.C.A. § 24-7-713(b)[5] to a person eligible to receive payments under A.C.A. § 24-5-125, it may prorate them or pay the entire amount otherwise due.
Question 4 — If the answer to Question 3 is no is ASHERS requiredto add the $75.00 to the benefit upon termination of the employee?
The statute requiring ASHERS to make monthly health benefit payments provides for an adjustment in the amount payable to a single, individual recipient only if the recipient is "eligible for an additional monthly benefit as a result of credited service" under a reciprocal state retirement system. A.C.A. § 24-5-125(b), (c)(4). In my opinion, accordingly, ASHERS may not prorate or otherwise adjust its payments under A.C.A. § 24-5-125 to a person who is not eligible for payments from ATRS under A.C.A. § 24-7-713(b) or from another reciprocal state retirement system under a similar provision. In such a case, ASHERS would be liable for the entire payments required by A.C.A. § 24-5-125.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The statute provides that the monthly ATRS payment may be as much as $75. See A.C.A. § 24-7-713(b)(1)(B), (b)(2)(C). Your request implies that ATRS currently pays $75 monthly.
[2] As alluded to in your request, the person's 2005 status under ATRS may be relevant to ATRS's liability, if any, for a supplemental monthly benefit. See A.C.A. § 24-7-713(b)(2)(A), (b)(2)(B). Because your request does not squarely present the question, which is for ATRS to decide at least initially, I state no opinion on it. The question, even if posed, would be so dependent on the prevailing facts that it probably could not be adequately addressed in the context of an Attorney General's opinion.
[3] The statute recites the discretionary-proration rule in two separate subsections, one applying to members retiring between July 1, 1999, and June 30, 2009, and one applying to members retiring after June 30, 2009. See A.C.A. § 24-5-125(b), (c)(4). Because the provisions are substantively identical, and one or the other must apply to the person at issue, I describe them in the accompanying text as being a single rule applying to all members retiring after June 30, 1999.
[4] A question arises about how to compute prorated payments in this context. Neither of the proration statutes considered here contains any indication how the prorated amounts should be computed. Legislative clarification would be appropriate and helpful. Absent such clarification, I believe it would not be unreasonable for a retirement system to calculate its prorated payment by multiplying the amount of its usual monthly supplemental payment by the percentage of the payee's time of employment in all state reciprocal systems that was spent in employment under the paying system. Assume, for example, that State Retirement System A's usual monthly supplemental payment is $100, and (reciprocal) System B's usual payment is $150. Assume further that a retired person worked 13 years (43.33% of her career) under System A and 17 years (56.67% of her career) under System B (and had no other service or credit under any other reciprocal system). System A would pay the retiree $43.33 per month ($100 x 43.33%) and System B would pay $85 ($150 x 56.67%). The retiree would receive a total of $128.33 per month, an amount that reflects both the time she worked for each system and the amount of each system's "regular" payment. My exposition of this method does not constitute an opinion that another reasonable method would not comply with the laws' requirement.
[5] Again, I state no opinion about whether ATRS is liable for a supplemental payment in this case. See supra note 2.