Cite as 2020 Ark. 385

# SUPREME COURT OF ARKANSAS

**No.** CV-20-624

| | |
|---|---|
| MICHAEL JOHN GRAY, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE DEMOCRATIC PARTY OF ARKANSAS; AND NICOLE HART, IN HER OFFICIAL CAPACITY AS CHAIR OF THE DEMOCRATIC PARTY OF ARKANSAS'S NOMINATING CONVENTION FOR HOUSE DISTRICT 12 | **Opinion Delivered:** November 24, 2020 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-20-5742] <br><br> HONORABLE MACKIE PIERCE, JUDGE |
| APPELLANTS <br> V. | |
| DOYLE WEBB, ON BEHALF OF THE REPUBLICAN PARTY OF ARKANSAS; AND DAVID TOLLETT, A RESIDENT, QUALIFIED ELECTOR, AND THE REPUBLICAN NOMINEE FOR ARKANSAS HOUSE DISTRICT 12 | AFFIRMED. |
| APPELLEES | |

**JOHN DAN KEMP, Chief Justice**

Michael John Gray, in his official capacity as Chairman of the Democratic Party of Arkansas, and Nicole Hart, in her official capacity as Chair of the Democratic Party of Arkansas's Nominating Convention for House District 12, appeal a Pulaski County Circuit Court order granting writ of mandamus and declaratory judgment. The circuit court found that Democratic Party nominee Jimmie Wilson had been convicted of crimes that disqualified him under article 5, section 9 of the Arkansas Constitution from serving in the

Arkansas House of Representatives. The court also found that Wilson's presidential pardon did not restore his eligibility to sit as a representative. For reversal, appellants argue that the circuit court erred in granting the petition because Wilson's presidential pardon negated his convictions and restored his right to seek and hold public office. We affirm.

## I. *Facts*

On August 22, 1990, Wilson entered a guilty plea in federal court to two counts of violating 18 United States Code section 641 and three counts of violating 18 United States Code section 658. These were all misdemeanor offenses. In 2001, Wilson received a presidential pardon from President William Jefferson Clinton.

On July 13, 2020, Wilson was selected as the Democratic Party nominee to run in the November 3, 2020 election for the District 12 position. On October 15, 2020, appellees Doyle Webb, on behalf of the Republican Party of Arkansas, and David Tollett, a resident, qualified elector, and the Republican Party nominee for the District 12 seat, filed a complaint in the Pulaski County Circuit Court pursuant to Arkansas Code Annotated section 7-5-207(b) (Supp. 2019), alleging that Wilson's convictions disqualified him from sitting in the Arkansas General Assembly despite his presidential pardon. They sought a declaration that Wilson was not qualified to serve in the Arkansas General Assembly and a writ of mandamus prohibiting (1) the counting of votes for Wilson and (2) his certification as an elected representative for District 12.

Following an October 26, 2020 hearing, the circuit court ruled from the bench that Wilson was ineligible to serve in the Arkansas House of Representatives because of his misdemeanor convictions and that his pardon did not restore his eligibility. That same day,

2

the circuit court entered an order finding that (1) Wilson had been convicted of crimes that disqualify him under article 5, section 9 of the Arkansas Constitution from sitting as a representative in the Arkansas General Assembly and (2) his pardon did not restore his eligibility to sit as a representative. The circuit court stayed pending appeal to this court the portion of its order prohibiting the county boards of election commissioners from counting any votes in Wilson's favor. The circuit court also stayed pending appeal any certification of the election results. On October 27, 2020, appellants filed their notice of appeal.

## II. *Eligibility to Hold Public Office*

Appellants argue that Wilson's presidential pardon, while not declaring him innocent of the federal charges to which he pleaded guilty and not erasing the underlying facts of the convictions, nullified those convictions. They contend that Wilson is eligible to hold public office because article 5, section 9 of the Arkansas Constitution, which prohibits an individual *convicted* of an infamous crime from holding public office, does not apply to him.[1]

This court applies the clearly-erroneous standard of review in mandamus and declaratory-judgment actions. *Wyatt v. Carr*, 2020 Ark. 21, at 9, 592 S.W.3d 656, 661. However, a circuit court's conclusion on a question of law is reviewed de novo and is given no deference on appeal. *Helena-West Helena Sch. Dist. v. Fluker*, 371 Ark. 574, 577, 268 S.W.3d 879, 882 (2007).

---

[1]The parties also dispute Wilson's qualification to sit as a member of the Arkansas General Assembly pursuant to Arkansas Code Annotated section 21-8-305 (Supp. 2019). Because the circuit court's order contains no ruling on Wilson's qualification under the statute, we do not address it. *See Steinbuch v. Univ. of Ark.*, 2019 Ark. 356, at 10–11, 589 S.W.3d 350, 357–58.

Article 5, section 9 of the Arkansas Constitution provides,

(a) No person convicted of embezzlement of public money, bribery, forgery, or other infamous crime is eligible to the General Assembly or capable of holding any office of trust or profit in this state.

(b) As used in this section, "infamous crime" means:

   (1) A felony offense;

   (2) Abuse of office as defined under Arkansas law;

   (3) Tampering as defined under Arkansas law; or

   (4) A misdemeanor offense in which the finder of fact was required to find, or the defendant to admit, an act of deceit, fraud, or false statement, including without limitation a misdemeanor offense related to the election process.

Ark. Const. art. 5, § 9.

When interpreting the constitution on appeal, our task is to read the laws as they are written and interpret them according to established principles of constitutional construction. *Edwards v. Campbell*, 2010 Ark. 398, at 4, 370 S.W.3d 250, 253. It is this court's responsibility to decide what a constitutional provision means. *Id.*, 370 S.W.3d at 253. We are not bound by the decision of the circuit court; however, in the absence of a showing that the circuit court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id.*, 370 S.W.3d at 253. Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Id.*, 370 S.W.3d at 253. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Id.*, 370 S.W.3d at 253.

In the case at bar, the circuit court found that (1) Wilson had been convicted of crimes that disqualify him from sitting as a representative under article 5, section 9 of the

4

Arkansas Constitution and (2) the presidential pardon did not restore his eligibility to sit as a representative. We agree with the circuit court's rulings.

First, we agree that the federal crimes for which Wilson was convicted under 18 United States Code sections 641 and 658 fall within the definition of "infamous crime" in article 5, section 9. The judgment in Wilson's federal criminal case was entered into evidence at the hearing. It shows that he pleaded guilty to two counts of violating section 641 by "converting public money, property[,] or records to personal use" and three counts of violating section 658 by "converting property mortgaged or pledged to farm credit agencies." By pleading guilty, Wilson admitted to his conduct under these federal statutes. Furthermore, both crimes required the culpable mental state of "knowing." *See* 18 U.S.C. §§ 641 and 658. We held in *Wilson v. Neal*, 332 Ark. 148, 161, 964 S.W.2d 199, 205 (1998), that although all five counts to which Wilson pleaded guilty were misdemeanors, "these convictions involved dishonesty and a breach of trust." We likewise have no hesitation holding that the crimes involved "acts of deceit, fraud, or false statement" within article 5, section 9's definition of "infamous crime." We therefore affirm the court's finding that Wilson was convicted of crimes that disqualify him from sitting as a representative pursuant to article 5, section 9 of the Arkansas Constitution.

Second, we agree with the circuit court that Wilson remains disqualified under article 5, section 9 despite his presidential pardon. Appellees cite *State v. Irby*, 190 Ark. 786, 81 S.W.2d 419 (1935), in which this court held that disqualification from holding public office under article 5, section 9 cannot be removed by a presidential pardon. Appellants urge that

5

we decline to follow *Irby* because article 5, section 9(b), which defines "infamous crime,"[2] had not been added when this court decided *Irby*. Appellants also claim that the reasoning in *Irby* is no longer sound. We are unpersuaded by appellants' arguments.

This court held in *Irby* that

[w]hile a pardon has generally been regarded as blotting out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense, it does not so operate for all purposes, and, as the very essence of a pardon is forgiveness or remission of penalty, a pardon implies guilt; it does not obliterate the fact of commission of the crime and the conviction thereof; it does not wash out the moral stain; as has been tersely said it involves forgiveness and not forgetfulness.

*Id*. at 797, 81 S.W.2d at 424. We further stated that "[w]e think it self-evident that the issuance and acceptance of a pardon within its self irrevocably acknowledges a conviction of the crime pardoned, and has the effect only of restoring civil rights as distinguished from political privileges. *Id*., 81 S.W.2d at 424.

We see no reason to depart from the long-standing precedent established by *Irby*. Our holding in *Irby* controls here. Although the term, "infamous crime," was not yet defined in 1935, article 5, section 9 nonetheless prohibited a person convicted of embezzlement of public money, bribery, forgery, *or other infamous crime* from holding public office. *Id*. at 790, 81 S.W.2d at 421 (emphasis added). We agree with appellees that the addition of subdivision (b) in 2017 simply clarified the meaning of "infamous crime." But the term was not without meaning prior to that amendment. *See State v. Oldner*, 361 Ark. 316, 327, 206 S.W.3d 818, 822 (2005) (applying the rules of constitutional interpretation

---

[2]Subdivision (b), which defines "infamous crime" was added through an amendment effective January 1, 2017. *See* Constitutional Amendment 95, § 2 (codified as amended at Ark. Const. art. 5, § 9 (Repl. 2019)).

and stating "that the framers in drafting Article 5, Section 9, intended that an infamous crime be one involving elements of deceit and dishonesty"); *see also Edwards*, 2010 Ark. 398, at 5, 370 S.W.3d at 253 ("[T]his court embraced the notion in *Oldner* that infamous crimes are those that impugn the integrity of the office and directly impact the person's ability to serve as an elected official."). The addition of subdivision (b) does not render *Irby* inapplicable to the present case. Moreover, the word "convicted," which appellants emphasize as determinative in this case, was included in article 5, section 9 when this court handed down *Irby*.[3]

Based on our standard of review, we affirm the circuit court's conclusion that Wilson's presidential pardon did not restore his eligibility to sit as a representative in the Arkansas General Assembly.

Affirmed.

Mandate to issue immediately.

*Fuqua Campbell, P.A.*, by: *Annie Depper*, for appellants.

*George P. Ritter*, Deputy General Counsel for the Republican Party of Arkansas; and *Gregory L. Vardaman*, for appellees.

---

[3]Public policy is for the General Assembly to establish, not the courts. *Martin v. Haas*, 2018 Ark. 283, at 9, 556 S.W.3d 509, 515. Article 5, section 9 was amended by article 95, section 2, which was approved in the November 8, 2016 general election. But the change was first initiated in the Arkansas General Assembly in 2015. *See* H.J.R. Res. 1027 § 2, 90th General Assem., Reg. Sess. (Ark. 2015). The General Assembly is presumed to be familiar with *Irby* and its progeny. *See Smith v. Shelter Mut. Ins. Co.*, 327 Ark. 208, 212, 937 S.W.2d 180, 182–83 (1997). Yet, it did not see fit to change the language to address presidential pardons.