Timothy L. EPPS *v.* STATE of Arkansas

CA CR 99–869                                           38 S.W.3d 899

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered February 7, 2001

*Witt Law Firm, P.C.*, by: *Ernie Witt*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. On July 13, 1998, appellant entered pleas of nolo contendere to the charges of terroristic threatening and arson. The trial court suspended imposition of sentence for a period of five years. On September 9, 1998, the State filed a petition to revoke Epps's suspended sentence on the grounds that he had committed the offenses of sexual abuse and third-degree domestic battery a few days earlier. After a hearing, the court revoked Epps's suspended sentence and sentenced him to six years in the Arkansas Department of Correction, with four years suspended.

On appeal to this court appellant argues that the trial judge erred in refusing to consider certain evidence, erred in refusing to permit a proffer, and erred in repeatedly interrupting appellant's counsel during his examination of witnesses. We affirm.

Appellant's first point relates to a tape-recorded interview he gave to the police. The tape itself was admitted into evidence without objection. The following then transpired:

THE COURT: It'll be played then. How long is it?

DEFENSE COUNSEL: About 30 or 40 minutes.

THE COURT: Do I have to see the whole thing?

PROSECUTING ATTORNEY: I hope not. You can stop it when you're bored. I guess.

PROSECUTING ATTORNEY (To the Witness): You've seen the tape and you were at the interview. What does the defendant say, first about the domestic battery?

DEFENSE ATTORNEY: Your Honor, I am going to let the tape speak for itself.

THE COURT: I'm not going to watch that tape unless somebody makes me watch it.

After further testimony by the officer on the witness stand, there was the following colloquy:

DEFENSE COUNSEL: That's not what was said. You're going to have to watch the tape.

THE COURT: I am not going to watch that tape unless you make me watch it, [Counsel].

DEFENSE COUNSEL: I've watched the tape and that statement is not in the tape.

THE COURT: You can test him on cross-examination.

And finally:

THE COURT: Now, [Counsel], don't argue with him about what's on the tape.

MR. TAYLOR: Well, I'm trying to keep the Court from having to watch it.

THE COURT: Either play the thing or accept his answers.

■ Appellant argues that it was error for the court to refuse to consider the tape of the interview which had already been admitted

into evidence. We do not agree that the court refused to consider the evidence. The trial judge clearly preferred to have the substance of the tape covered by direct and cross-examination of the interviewing officer, and the judge had some discretion in this regard. *See* Rule 611(a) of the Arkansas Rules of Evidence. Beyond that, it is clear from what the judge said that he would have viewed the tape himself had counsel for the appellant insisted.[1] Having not insisted that the trial judge view the tape, appellant is in no position to complain now on appeal.

■■ Appellant's second argument is that the trial court erred in refusing to permit him to make a proffer when counsel asked a question and the State's objection was sustained. The short answer to this contention is that the trial court told appellant's counsel that he could make the proffer later. The trial judge has general superintending control over the conduct of trials and specifically has discretion as to the manner in which a proffer is made. *See* Rule 103(b) of the Arkansas Rules of Evidence. We see no impropriety in the court's directing that the proffer be made later. Appellant never raised the matter later. We hold that the court's ruling was not error.

Finally, appellant contends that the trial judge erred in interrupting his attorney during both direct and cross-examination by making evidentiary rulings without an objection from the State. It has been generally held that the trial judge has the authority to exclude improper evidence even in the absence of an objection. *Commonwealth v. Haley*, 363 Mass. 513, 296 N.E.2d 207 (1973); *South Atlantic S.S. Co. of Delaware v. Munkacsy*, 37 Del. 580, 187 A. 600 (1936); *United States v. Wright*, 542 F.2d 975 (7th Cir. 1976); *Strong, McCormick on Evidence*, 5th Ed. § 55 at 247; 75 Am. Jur. 2nd Trial § 272; *see also The American Workmen v. Ledden*, 196 Ark. 902, 120 S.W.2d 346 (1938).

In *Haley, supra,* the Massachusetts Supreme Court said:

> A good judge must have firmness. Sitting with a jury, he should so conduct the trial that the case will go to the jury, so far as his lawful powers permit, free from irrelevant considerations and appeals to prejudice and emotion. As a former justice of our court once said: 'The judge who discharges the functions of his office

---

[1] Present counsel was not the attorney at the revocation hearing.

is . . . the directing and controlling mind at the trial, and not a mere functionary to preserve order and lend ceremonial dignity to the proceedings.' It is true, now as in Lord Bacon's day, that 'an over-speaking judge is no well-tuned cymbal,' and that 'It is no grace to a judge first to find that which he might have heard in due time from the bar.' A judge who takes a case that he does not understand out of the hands of competent counsel who do understand it, is a nuisance. The judge must never become or appear to be a partisan.

But a judge need take no vow of silence. He is there to see that justice is done or at least to see that the jury have a fair chance to do justice. . . . The judge ought not to let the jury be diverted from the real issue. The skill of counsel must not be allowed to mislead the jury by raising false issues or by appeals to emotion and prejudice. . . . It is not always easy for a judge to see his duty clearly. But a first-rate trial judge will find and tread the narrow path that lies between meddlesomeness on the one hand and ineffectiveness and impotence on the other.

Quoting from Lummus, *The Trial Judge*, 19–21 (1937).

■ ■ In *Skiver v. State*, 37 Ark. App. 146, 151, 826 S.W.2d 309 (1992), Chief Judge George Cracraft, speaking for this court, said:

[W]hile we may agree with appellant that it is improper for a trial judge to needlessly inject himself into the trial, the judge is not merely the chairman of a trial, who must remain mute until a party calls upon him for a ruling; instead he has some responsibility for the proper conduct of the trial and achievement of justice.

Although it is a safer practice for a court to defer action on admission of evidence until a proper objection is made by the party interested in having it excluded, the court is not bound to hear and determine the case on improper evidence. In the exercise of its discretion to control and regulate the conduct of the trial, the court may, on its own motion, exclude or strike evidence which is wholly incompetent or inadmissible for any purpose, even though no objection is made to such evidence. It is the responsibility of the trial judge to maintain an appropriate balance in the performance of his role of impartiality, and a clear transgression of the proper bounds must be demonstrated before an appellate court is justified in reversing a judgment because the trial judge injected himself into the trial. (Citations omitted.)

■ We have carefully examined the instances in which the trial court made comments or rulings during the appellant's examination of witnesses. Once the trial court cautioned counsel against making his closing argument during the questioning of a witness. Several times the court expressed bewilderment as to the point of the questioning, without actually making a ruling. Most of the court's sua sponte rulings on evidence were to exclude a certain line of questioning as irrelevant. In each instance it appears that the court's ruling was correct — the evidence was irrelevant. While it is true that courts have zealously protected the defendant's right to cross-examine witnesses, there is no right to cross-examine witnesses about irrelevant matters.

■ While we agree that the trial court exhibited some impatience during the hearing, we find no indication of bias. Although this was a bench trial, even in a trial before a jury the trial court has some authority to exclude evidence absent an objection. The court's rulings appear to have been correct. We hold that the trial court committed no reversible error.

Affirmed.

HART, BAKER, CRABTREE, and ROBBINS, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I respectfully dissent from the decision affirming the trial judge's refusal to watch a videotape of appellant's custodial interrogation in order to resolve a factual dispute surrounding trial testimony offered by the interviewing officer concerning what appellant supposedly said during the interrogation. The videotape had already been introduced into evidence in the bench trial. The relevant colloquy between the trial judge and appellant's trial counsel is accurately recounted in the majority opinion, which concludes that the trial judge did not refuse to consider the evidence but merely

> preferred to have the substance of the tape covered by direct and cross-examination of the interviewing officer, and the judge had some discretion in this regard. . . . Beyond that, it is clear from what the judge said that he would have viewed the tape itself had the appellant insisted. Having not insisted that the trial judge view the tape, appellant is in no position to complain now on appeal.

Whether the appellant made the statement during the custodial interrogation that was attributed to him by the testifying police officer was an issue of fact that should have been resolved by the trier of fact watching the videotape. The tape had been admitted into evidence. Appellant's trial counsel told the trial judge, "You're going to have to watch the tape." The trial judge then said, "I am not going to watch that tape unless you make me watch it." Trial counsel had no power to compel the trial judge to view the videotape. His only recourse was to appeal the court's refusal to do so.

I am deeply concerned that we are affirming the refusal of a trial judge in a bench trial to view direct evidence bearing on a disputed issue of fact in a criminal trial. Thus, I respectfully dissent.