Brian Keith MISENHEIMER *v.* STATE of Arkansas

CA CR 07-79                                    265 S.W.3d 764

Court of Appeals of Arkansas
Opinion delivered October 24, 2007

*Dustin Daniel Dyer*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Leaann J. Irvin*, Ass't Att'y Gen., for appellee.

D.p. MARSHALL JR., Judge. Brian Misenheimer stole a Ford F-350 dually pick-up truck from the parking lot of an Exxon station in Pulaski County. Two days later, while he was high on methamphetamine, Misenheimer drove the truck to Walgreens. When he left the store, a police car was partially blocking the parking-lot exit. Misenheimer drove the truck over the front-end of the police car and led police officers on a high-speed chase through Little Rock, during which one officer's car ran into a retaining wall. Misenheimer eventually drove to the airport, where he knocked down a gate and drove onto the airport grounds. The chase then continued into Saline County. Misenheimer was apprehended there after a head-on collision that severely injured a state trooper.

Misenheimer was charged with various felonies in both Pulaski County and Saline County. He first pleaded guilty to five felony charges in Pulaski County and was sentenced by the circuit court there. The prosecutor in Saline County then amended his information and sought to sentence Misenheimer as an habitual offender under Ark. Code Ann. § 5-4-501 (Supp. 2007). Misenheimer pleaded guilty to the Saline County charges, while objecting to the application of the sentencing enhancement. The Saline County circuit court rejected Misenheimer's arguments. He was sentenced as an habitual offender to 125 years in prison to be served concurrently with his Pulaski County sentence. Misenheimer now appeals his sentence. We review this question of statutory interpretation *de novo. State v. Sola*, 354 Ark. 76, 84, 118 S.W.3d 95, 99 (2003).

I.

Misenheimer makes three arguments why Ark. Code Ann. § 5-4-501 should not apply to what he describes as his continuous criminal episode stretching across two counties. Two of Misenheimer's arguments fail at the threshold.

First, we have doubts about whether he preserved his due-process point in the circuit court. He had two sentences about

it in his trial brief, and did not mention it during his oral argument to the circuit court. *Compare Standridge v. State*, 357 Ark. 105, 118, 161 S.W.3d 815, 822 (2004). Even assuming that the point is preserved, we affirm on it. Misenheimer had more than two months' notice — from the amended information — of the State's intention to seek the enhancement before he pleaded guilty in Saline County. And for the reasons explained later, we discern no fundamental unfairness in the application of the enhancement statute here.

Second, Misenheimer cannot be heard to complain in this appeal that the Pulaski County circuit court did not advise him before his guilty plea that his conviction might subject him to an enhanced sentence on the pending Saline County charges. Misenheimer was represented by counsel in both counties. He chose not to appeal his conviction in Pulaski County. He cannot belatedly assert error in his Pulaski County plea in this Saline County case.

## II.

Coming to the hub of the case, Misenheimer argues that he is not an habitual criminal in the ordinary sense of the word "habitual." He committed, he maintains, one continuous series of connected crimes, and thus the circuit court should not have enhanced his sentence. The purpose of Ark. Code Ann. § 5-4-501 is to punish repeat offenders severely. Original Commentary to Ark. Code Ann. § 5-4-501 (Repl. 1995). We must give the words of Ark. Code Ann. § 5-4-501 their ordinary meaning. *Benson v. State*, 86 Ark. App. 154, 157, 164 S.W.3d 495, 496 (2004). When applying a criminal statute, we must also follow the rule of lenity: we strictly construe the statute and resolve any doubt about its meaning in Misenheimer's favor. *Boveia v. State*, 94 Ark. App. 252, 257, 228 S.W.3d 550, 554 (2006). Under the governing statute and precedent, we conclude that § 5-4-501(b) applies to the convictions arising from Misenheimer's two-county, multi-act episode.

Misenheimer first argues from the statute's title: "§ 5-4-501 Habitual Offenders — Sentencing for felony[.]" We agree that the title ill fits what happened here. But the title does not control, as our cases make plain. *Baker Refrigeration Systems, Inc. v. Weiss*, 360 Ark. 388, 400-01, 201 S.W.3d 900, 907 (2005). The statute's words control. The introductory section states: "A defendant

meeting the following criteria may be sentenced [to an enhanced penalty]." Ark. Code Ann. § 5-4-501(b)(1). The criteria applicable to Misenheimer are:

(A) A defendant who:

(i) Is convicted of a felony other than a felony enumerated in subsections (c) and (d) of this section committed after June 30, 1993; and

(ii) Has previously been convicted of four (4) or more felonies or who has been found guilty of four (4) or more felonies;

. . . .

(C) A defendant who:

(i) Is convicted of any felony enumerated in subsection (d) of this section committed after June 30, 1997; and

(ii) Has previously been convicted of four (4) or more felonies not enumerated in subsection (d) of this section or who has been found guilty of four (4) or more felonies not enumerated in subsection (d) of this section.

Ark. Code Ann. § 5-4-501(b)(1)(A)(i)-(ii) & (C)(i)-(ii).

■ This statute is unambiguous. *Cf. Benson*, 86 Ark. App. at 158, 164 S.W.3d at 497 (2004) (so holding as to Ark. Code Ann. § 5-4-501(d)). Thus we have no need to resort to the rules of statutory interpretation. 86 Ark. App. at 157, 164 S.W.3d at 496. And Misenheimer met the statutory criteria: he was convicted in Saline County of first-degree battery — a listed felony — after June 30, 1997, and theft-by-receiving, fleeing, and criminal mischief — non-listed felonies — after June 30, 1993. He had "previously been convicted" of four or more non-listed felonies in Pulaski County. Because Misenheimer's convictions satisfied the criteria, the statute applied to him even though the statute's title describes a class of persons that does not seem to include him.

Our decision is guided by *Tackett v. State*, 298 Ark. 20, 766 S.W.2d 410 (1989) and *Smith v. State*, 351 Ark. 468, 95 S.W.3d 801 (2003), where our supreme court addressed similar issues.

Misenheimer argues that *Tackett* governs his situation. We are persuaded, however, that *Smith* is more in point.

Tackett's vehicle struck another vehicle, causing it to crash. *Tackett*, 298 Ark. at 24-25, 766 S.W.2d at 411. One passenger died instantly. Tackett was charged and convicted of manslaughter for this death and of leaving the scene of an accident. After lingering in a coma, another passenger died several years later. Tackett was then charged with a second count of manslaughter. Our supreme court rightly rejected the State's attempt to apply the habitual-offender statute during the prosecution for the second death because all the crimes arose out of Tackett's single act of recklessly crashing his vehicle. 298 Ark. at 25-26, 766 S.W.2d at 412-13. The court held that "there is nothing habitual about the commission of a single criminal act resulting in multiple charges and convictions." *Ibid.*

In *Smith*, our supreme court distinguished *Tackett* and upheld a § 5-4-501 enhancement for multiple convictions arising from a crime spree. Smith committed an aggravated robbery in Desha County, then drove to Drew County, where he committed kidnapping, rape, and other felonies. 351 Ark. at 470-72, 95 S.W.3d at 802-03. He was convicted of the Drew County crimes first. He was then convicted of the robbery in Desha County and was sentenced there as an habitual offender. *Ibid.* Smith appealed, cited *Tackett*, and argued that "because these 'prior' convictions arose out of the same course of conduct as the aggravated robbery, . . . the Drew County convictions could not be used to enhance his sentence." *Smith*, 351 Ark. at 477, 95 S.W.3d at 806. Our supreme court rejected this argument. The court held that the circuit court did not err in sentencing Smith as an habitual offender because "Smith's multiple criminal acts were not a 'continuing course of conduct,' nor did they arise out of the same transaction." 351 Ark. at 478-79, 95 S.W.3d at 807 (quoting Ark. Code Ann. § 5-1-110(a)(5)).

*Smith*, not *Tackett*, controls here. First, two days separated Misenheimer's theft of the pick-up truck and his crimes during the chase from Walgreens. Second, though Misenheimer's acts on the day of the chase may have been a continuous series of crimes, they were not "a continuing course of conduct." That phrase is a statutory term of art. Ark. Code Ann. § 5-1-110(a)(5) (Repl. 2006). The crimes to which it applies are self-defined as continuing offenses; therefore, a person may not be convicted of more than one offense even though he commits what seem like multiple

criminal acts. *Smith v. State*, 296 Ark. 451, 454, 757 S.W.2d 554, 555-56 (1988). By statute, Misenheimer's crimes are not defined as continuing crimes. Ark. Code Ann. §§ 5-13-201, 5-36-106, 5-38-204 (Repl. 2006) and 5-54-125 (Repl. 2005). Finally, unlike in *Tackett*, we do not face a single act that resulted in two crimes.[1]

■ Like in *Smith*, Misenheimer's crimes involved multiple acts; his crimes harmed different people; and his crimes occurred at different locations in different counties. His theft, moreover, occurred two days before his other crimes. That all but one of Misenheimer's crimes arose from a continuous series of events is not dispositive. The determining factor is the multiplicity of acts, victims, and locations. *Smith*, 351 Ark. at 478, 95 S.W.3d at 807. We are bound to follow *Smith*, and we do so. The Saline County circuit court therefore made no error in sentencing Misenheimer as an habitual offender.

Affirmed.

BAKER and MILLER, JJ., agree.

---

[1] This court has also called into question the continued viability of *Tackett* in light of a post-decision amendment to the statute. *Benson*, 86 Ark. App. at 160, 164 S.W.3d at 498 (2004). Because that amendment changed part of § 5-4-501 that is not involved in this case, we do not rest our application of *Tackett* on the statutory change.