375 Ark. 499

**Tommy Lee BROWN, Appellant,**

**v.**

**STATE of Arkansas, Appellee.**

**No. CR 08–1051.**

Supreme Court of Arkansas.

Feb. 5, 2009.

John F. Gibson, Jr., Monticello, for appellant.

Dustin McDaniel, Att'y Gen., by Laura Shue, Ass't Att'y Gen., for appellee.

PAUL E. DANIELSON, Justice.

Appellant Tommy Lee Brown appeals from the judgment and disposition order convicting him of four counts of cruelty to animals, fining him $530, assessing court costs of $150, and ordering restitution in the amount of $5,091.50 payable to Bluebonnet Equine Humane Society (BEHS). He asserts two points on appeal: (1) that the circuit court erred in ordering restitution; and (2) that the circuit court erred in determining the amount of restitution. We affirm the judgment and disposition order.

On appeal, Brown does not challenge the sufficiency of the evidence to support his convictions, but instead, challenges only the order of restitution and the amount thereof. Accordingly, only a brief recitation of the facts is necessary. *See Rollins v. State,* 362 Ark. 279, 208 S.W.3d 215 (2005). On September 17, 2007, Brown appealed to the circuit court the order of the District Court of Drew County finding him guilty of cruelty to animals, assessing him a fine of $430,[1] assessing costs of $100, and ordering restitution in the amount of $5,090.51. On February 9, 2008, a bench trial was held by the circuit court. Testimony was presented that after four of Brown's horses were seized due to maltreatment by malnourishment, Tina Shalmy, a volunteer with BEHS, took the horses to her property where she cared for them. Ms. Shalmy testified to the costs incurred to care for the horses, specifically:

PROSECUTOR: Tell me, if the Court were to find you were to get restitution, how much money have y'all been out?

Ms. SHALMY: It was five thousand and something. My part alone is three thousand something and we had a two thousand dollar vet bill that she was supposed to bring with her today.

An itemized list of expenses per horse was then admitted as an exhibit. With respect to the veterinarian bill, the following colloquy took place:

PROSECUTOR: Besides the care of those horses, you have a vet bill, and how much is that?

Ms. SHALMY: It was two thousand and something dollars, but the veterinarian did not appear today. She has that bill. It was for the care of—

. . . .

CIRCUIT COURT: There may be some bills in this file. It appears to be two vet bills in the Clerk's file from Crystal Springs Vet Service, one for eight hundred and six and one for eight hundred and seventy-one fifty.

PROSECUTOR: Does that sound correct?

Ms. SHALMY: Yes, that's about right.

. . . .

PROSECUTOR: And you're asking for that because they are going to ask your society to pay that?

Ms. SHALMY: Our society has already paid it.

PROSECUTOR: They have already paid it?

Ms. SHALMY: Uh-huh.

In addition, Ms. Shalmy testified that BEHS was a nonprofit organization.

After finding Brown guilty on four counts of animal cruelty, the circuit court found that it could impose restitution, pursuant to Arkansas Code Annotated § 5–4–205 (Repl.2006), and further ordered restitution, in the amount already set forth above, to BEHS. Brown now appeals.

---

1. The fine consisted of a $425 fine and $5 county jail fee.

For his first point on appeal, Brown argues that the circuit court erred in ordering restitution pursuant to Ark. Code Ann. § 5–4–205, because the circuit court failed to make any determination that BEHS was a victim. He maintains that, while BEHS incurred expenses caring for the horses, it was not as a result of his crime. He further claims that BEHS voluntarily assumed the horses' care, which was not its duty under the law, and, thus, it was not a victim entitled to restitution. The State responds that, in accord with the statute, BEHS suffered monetary loss as a result of Brown's crimes because it treated and cared for the horses, which required care to recover from the physical damage and injuries Brown caused them. It avers that the broad language of the statute allows BEHS to collect from Brown the monetary expense that it incurred as a direct or indirect result of his crimes.

The instant case calls on us to interpret section 5–4–205. This court reviews issues of statutory interpretation de novo, as it is for this court to decide the meaning of a statute. *See Stivers v. State,* 354 Ark. 140, 118 S.W.3d 558 (2003). We construe criminal statutes strictly, resolving any doubts in favor of the defendant. *See id.* We also adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *See id.* We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation. *See id.* Additionally, in construing any statute, we place it beside

other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *See id.*

Arkansas Code Annotated § 5–4–205(a)(1) provides that "[a] defendant who is found guilty or who enters a plea of guilty or nolo contendere to an offense may be ordered to pay restitution." The section further provides that "[w]hether a trial court or a jury, the sentencing authority shall make a determination of actual economic loss caused to a victim by the offense." Ark.Code Ann. § 5–4–205(b)(1). "Victim," for purposes of the section or any provision of law relating to restitution, is defined as "any person, partnership, corporation, or governmental entity or agency that suffers property damage or loss, monetary expense, or physical injury or death as a direct or indirect result of the defendant's offense or criminal episode." Ark. Code Ann. § 5–4–205(c)(1). The question presented in the instant case is whether BEHS was a victim entitled to restitution as a result of Brown's cruelty-to-animals offenses. We conclude that it was.

BEHS is a humane society registered as a foreign nonprofit corporation here in Arkansas, of which we can take judicial notice.[2] *See Cloird v. State,* 349 Ark. 33, 76 S.W.3d 813 (2002). *See also Mid–State Homes, Inc. v. Knight,* 237 Ark. 802, 803, 376 S.W.2d 556, 557 (1964) ("We take judicial notice of records required to be kept by the Secretary of State."); *Public Loan Corp. v. Stanberry,* 224 Ark. 258, 262 n. 2, 272 S.W.2d 694, 697 n. 2 (1954) ("We take judicial notice of public records required to be kept."). Furthermore, as evidenced by Ms. Shalmy's testimony set forth above, BEHS incurred monetary expense, either directly or indirectly, as a result of

2. In addition, a review of the record reveals further evidence that BEHS is a corporation, as the expense report admitted into evidence references BEHS as Bluebonnet Equine Humane Society, Inc.

Brown's cruelty to the horses, when it cared for and obtained treatment for the horses following their seizure. Here, Brown asserts that there was no proof that he caused the horses "to be in any worse shape when they were taken from the pasture than they were when he put them there," and, thus, the circuit court could not conclude that the expenses incurred by BEHS were a result of his offense. However, Brown's assertion belies the fact that he was found guilty on four counts of cruelty to animals, convictions that he does not challenge on appeal.

In addition, Brown, relying on *State v. Webb*, 130 S.W.3d 799 (Tenn.Crim.App. 2003), contends that in order to be a victim, the circuit court was required to find that BEHS seized the horses lawfully. However, this argument, too, is without merit. The statutory definition of "victim" set forth in section 5–4–205(c)(1) is both plain and unambiguous and in no way requires a finding that a victim acted lawfully, rather than voluntarily.

In sum, section 5–4–205 provides that a defendant found guilty of an offense may be ordered to pay restitution and that the sentencing authority shall make a determination of actual economic loss caused to a victim by the offense. It is clear from the evidence presented to the circuit court that BEHS constituted a victim as defined by the statute. Accordingly, the circuit court did not err when it determined that BEHS was entitled to restitution and ordered Brown to pay restitution to BEHS.

■ For his second point, Brown argues that the circuit court erred in determining the amount of restitution. Specifically, he contends that the circuit court erred when it did not conduct a hearing to determine the correct amount of economic loss sustained by BEHS. The State responds that this issue is not preserved for appellate review because Brown failed to object to the circuit court's determination of the amount of restitution. Alternatively, the State urges, the facts established, by a preponderance of the evidence, a basis for the amount of restitution ordered.

The State is correct; this issue is not preserved for our review. Our review of the record reveals that Brown merely challenged whether BEHS was a victim, and, thus, whether restitution was proper. At the conclusion of the trial, the circuit court orally ruled that it would order restitution in the same amount ordered by the district court. At that time, Brown merely questioned whether he was precluded from owning horses in the future. After the circuit court responded affirmatively, the circuit court inquired as to how Brown wished to pay his restitution. No objection was made at either time regarding the amount of restitution ordered. We have held that to preserve an issue for appeal, a defendant must object at the first opportunity. *See Price v. State*, 365 Ark. 25, 223 S.W.3d 817 (2006). Here, Brown failed to object or raise his argument below. Accordingly, we are precluded from reaching his second point on appeal. *See Phillips v. State*, 304 Ark. 656, 803 S.W.2d 926 (1991).

For the foregoing reasons, we affirm Brown's judgment and disposition.

Affirmed.