


# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-13-1095

| | |
|---|---|
| KATHY GENE GRIFFIN<br><div align="right">APPELLANT</div> | **Opinion Delivered** February 4, 2015 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION [NO. CR 2012-1938] |
| STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | HONORABLE BARRY SIMS, JUDGE |
| | AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant Kathy Gene Griffin appeals from her conviction for first-degree failure to report child maltreatment as a mandated reporter in violation of Ark. Code Ann. § 12-18-201 (Repl. 2009). She was sentenced by the jury to one year of probation and a $2500 fine. Griffin argues on appeal (1) that the circuit court should have granted a directed verdict because there was insufficient evidence to convict her under Ark. Code Ann. § 12-18-201; (2) that if this statute is ambiguous, it should be interpreted in her favor under the rule of lenity; (3) that the circuit court erred in refusing necessary and relevant jury instructions; and (4) that the circuit court erred by limiting the presentation of exculpatory evidence and the cross-examination of prosecution witnesses. We affirm.

Griffin was charged in June 2012 with violating Ark. Code Ann. § 12-18-201, failure to notify by a mandated reporter in the first degree. The information alleged that Griffin, on or about February 1, 2012, through March 14, 2012, had reasonable cause to suspect that a

child had been subjected to child maltreatment and had knowingly failed to notify the child–abuse hotline. At the jury trial held in September 2013, the following evidence was presented.

Robert Shamburger, the father of the victim, M.K.S., testified that his daughter's birthday was on October 25, 1993, and that she had turned eighteen on October 25, 2011. According to Mr. Shamburger, on February 24, 2012, M.K.S. disclosed to him that she had previously had a sexual relationship with Kelly O'Rourke, a math teacher and volleyball coach at Mount St. Mary Academy in Little Rock, where M.K.S. had attended high school. M.K.S. indicated that this relationship had begun when she was sixteen and that it had recently ended. Mr. Shamburger immediately contacted his wife, Sarah Shamburger, who was also a teacher at Mount St. Mary. The Shamburgers testified that M.K.S. was extremely upset and depressed about the break-up and that she did not want them to report O'Rourke to the authorities. The Shamburgers met with O'Rourke on Sunday, February 26, 2012, and told her that she needed to resign from the school the next morning. Later that evening, the Shamburgers received a phone call from Griffin, who was employed at Mount St. Mary as a school counselor, dean of discipline, and athletic director. O'Rourke and Griffin were also long-term roommates. Griffin convinced the Shamburgers that, for the good of the school and their relationship with their daughter, they should not report the inappropriate relationship to the police at that time. Instead, Griffin stated that the Shamburgers should view the incident "as a bad breakup" and that they should wait until the end of the year, when Griffin and O'Rourke would quietly resign from the school.

The Shamburgers agreed to wait one week, stating that they had their hands full with M.K.S., who had become uncontrollable and suicidal. The following weekend, Griffin again phoned the Shamburgers and convinced them not to report O'Rourke for another week. The Shamburgers stated that they agreed to wait because Griffin was a trusted school official and an acquaintance. However, they had also been seeking counseling for M.K.S., and when Griffin phoned the Shamburgers on Friday, March 9, 2012, they told her that they had an appointment with a counselor the following Monday and that the counselor had informed them that she was a mandated reporter who would be required to notify the child-abuse hotline. On the morning of Sunday, March 11, Griffin phoned the Shamburgers and asked if a report would still be made if O'Rourke agreed to resign right away. Mr. Shamburger informed Griffin that the relationship would still be reported. Griffin then anonymously made a report to the child-abuse hotline and also told Diane Wolfe, the principal at Mount St. Mary, who made a second report to the hotline later in the day on March 11. On Monday, March 12, Mr. Shamburger testified that he and his wife met with the counselor, Bonnie Thomas, and then met with Wolfe and other school officials. According to Mr. Shamburger, that was the last day that Griffin and O'Rourke worked at Mount St. Mary.

O'Rourke also testified and admitted that she was M.K.S.'s teacher and coach and that she had a sexual relationship with M.K.S. from January 10, 2010, through January 2012. O'Rourke testified that she had pled guilty to first-degree sexual assault and that she had also pled guilty to violating the conditions of her suspended sentence by contacting M.K.S. while she was in prison. O'Rourke stated that she told Griffin, who was her roommate at the time,

about the relationship on February 24, 2012, after M.K.S. had told her parents. According to O'Rourke, she had initially agreed to resign after meeting with the Shamburgers on February 26, 2012, but Griffin convinced them to give her a couple of weeks. O'Rourke testified that Griffin did not report her to the hotline until March 11, after Griffin was informed that a third party would be reporting the relationship, and that Griffin was upset about making the report because she felt that she would be sentencing O'Rourke to jail. When questioned as to whether Griffin was aware of her relationship with M.K.S. before February 24, 2012, O'Rourke testified that she had denied an inappropriate relationship with the girl when Griffin had inquired about it on several occasions prior to that date.

Gary Glisson, the administrator for the state child-abuse hotline, confirmed that there was an anonymous report made on the morning of March 11, naming O'Rourke as the offender and M.K.S. as the victim. The parties stipulated that this report was made by Griffin. Glisson stated that there was a second report made by Diane Wolfe on the afternoon of March 11 and a third report on March 12 by Bonnie Thomas. Glisson explained that the hotline operators do not investigate the reports but that they assign it to a law-enforcement agency for further investigation. Glisson testified that anonymous reports are acceptable as long as ample information is given to identify the relevant parties.

At the conclusion of the trial, Griffin was convicted by the jury of first-degree failure to notify by a mandated reporter, and she was sentenced to one year of probation and a $2500 fine. The judgment and commitment order was entered on September 26, 2013, and Griffin filed a timely notice of appeal.

In her first point on appeal, Griffin argues that the circuit court should have granted her a directed verdict, as there was insufficient evidence presented to show that she violated Ark. Code Ann. § 12-18-201. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007). On appeal, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In determining whether there is substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence which supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*

Arkansas Code Annotated section 12-18-201 (Repl. 2009) states,

(a) A person commits the offense of failure to notify by a mandated reporter in the first degree if he or she:
(1) Is a mandated reporter under this chapter;
(2) Has:
(A) Reasonable cause to suspect that a child has been subjected to child maltreatment;
(B) Reasonable cause to suspect that a child has died as a result of child maltreatment; or
(C) Observes a child being subjected to conditions or circumstances that would reasonably result in child maltreatment; and
(3) Knowingly fails to notify the Child Abuse Hotline of the child maltreatment or suspected child maltreatment.
(b) Failure to notify by a mandated reporter in the first degree is a Class A misdemeanor.

A "child" is defined as an individual who is from birth to eighteen years of age, and "child maltreatment" includes abuse, sexual abuse, neglect, sexual exploitation, or abandonment. Ark. Code Ann. § 12-18-103(5) & (6) (Repl. 2009). An individual listed as

SLIP OPINION

a mandated reporter shall "immediately" notify the hotline if he or she reasonably suspects child maltreatment has occurred, and the list of "mandated reporters" includes individuals who are school counselors, school officials, and teachers. Ark. Code Ann. § 12-18-402(a) & (b)(22), (23) & (26) (Repl. 2009).

Although Griffin admits that she was a mandated reporter, she contends, as she did in her directed-verdict motion at trial, that she had no obligation under this statute to report O'Rourke to the child-abuse hotline because M.K.S. was an adult when Griffin learned of the abuse. As support for her argument, Griffin cites to another statute in the Child Maltreatment Act, Ark. Code Ann. § 12-18-306 (Repl. 2009),[1] which is found in the subchapter governing the Child Abuse Hotline and which states,

> The Child Abuse Hotline shall accept a report of sexual abuse, sexual contact, or sexual exploitation naming an adult as the victim only if:
> (1) The alleged offender is a caretaker of a child; and
> (2) The person making the report is one (1) of the following:
> (A) The adult victim;
> (B) A law enforcement officer;
> (C) The adult victim's counselor or therapist;
> (D) The alleged offender's counselor or therapist; or
> (E) The alleged offender.

Because this statute limits the reports that must be accepted by the hotline when the named victim is an adult to certain categories of reporters, which Griffin asserts do not include her, she argues that Ark. Code Ann. § 12-18-201 should be interpreted as imposing no obligation on her to report O'Rourke to the hotline.

---

[1]This statute was amended in 2013; however, both parties agree that the 2009 version applies to this case.

We review questions of statutory interpretation de novo on appeal, and criminal statutes are strictly construed, with any doubts being resolved in favor of the defendant. *Brown v. State*, 375 Ark. 499, 292 S.W.3d 288 (2009). The primary rule of statutory construction is to give effect to the intent of the legislature. *Id*. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id*. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to rules of statutory interpretation. *Id*.

The State asserts that the language in Ark. Code Ann. § 12-18-201 is plain and unambiguous and that the evidence in this case was sufficient to show that Griffin violated the statute by knowingly failing to report O'Rourke for more than two weeks after she had direct knowledge of the maltreatment. We agree. While Griffin argues that the statute did not apply in this case because M.K.S. was eighteen years old before Griffin learned of the inappropriate relationship with O'Rourke, Ark. Code Ann. § 12-18-201 contains no such limitation. Instead, the statute is written in the past tense to include "a child [who] *has been subjected* to child maltreatment." Ark. Code Ann. § 12-18-201(a)(2) (emphasis added). Thus, by its plain language, the statute includes the situation here, where Griffin discovered that M.K.S. had been subjected to child maltreatment when she was in high school and under the age of eighteen.

It is true, as Griffin argues, that statutes relating to the same subject matter are said to be *in pari materia* with each other and should be interpreted in a harmonious manner if possible. *Sesley v. State*, 2011 Ark. 104, 380 S.W.3d 390. However, Ark. Code Ann. § 12-

7

18-306 does not dictate a contrary result, as it is found in a separate subchapter discussing the responsibilities of the child-abuse hotline, and it does not affect the unambiguous language governing mandated reporters found in Ark. Code Ann. § 12-18-201. Furthermore, while Griffin contends that it would be an absurd result if the statute were interpreted to require mandated reporters to make a hotline report where the victim is now an adult, as the alleged conduct may have taken place "decades in the past," the State correctly notes that the purpose of the Child Maltreatment Act is not only to protect a maltreated child, but also to protect "any other child under the same care who may also be in danger of maltreatment." Ark. Code Ann. § 12-18-102(3)(A) (Repl. 2009).

Griffin also argues that there was insufficient evidence to show that she violated Ark. Code Ann. § 12-18-201 because she did in fact report the maltreatment to the child-abuse hotline on March 11, 2012. While Ark. Code Ann. § 12-18-402(a) states that a mandated reporter must report any alleged maltreatment "immediately," Griffin argues that this requirement of immediacy is not found in Ark. Code Ann. § 12-18-201 and that it was therefore not an element of the charged offense. We disagree, as the prosecution must prove that a person is a "mandated reporter" in order to show a violation of Ark. Code Ann. § 12-18-201. However, this term is not specifically defined in that statute. Thus, the language in Ark. Code Ann. § 12-18-402, which is a separate statute that discusses and defines mandated reporters, clearly applies to the offense of failure to notify by a mandated reporter, and the jury was properly instructed as to this requirement of immediacy when it was given the statutory definition of a mandated reporter along with the other statutory definitions of relevant terms

8

SLIP OPINION

in Ark. Code Ann. § 12-18-201, such as "child" and "child maltreatment."

Griffin further contends that the inclusion of the word "immediately" renders the statute unconstitutionally vague because there is no statutory definition of that term, and the statute therefore fails to give fair notice as to what conduct is prohibited. As our supreme court stated in *Talbert v. State*, 367 Ark. 262, 271, 239 S.W.3d 504, 512 (2006),

> A law is unconstitutionally vague if it does not give a person of ordinary intelligence fair notice of what conduct is prohibited. *Reinert v. State*, 348 Ark. 1, 71 S.W.3d 52 (2002). There must be ascertainable standards of guilt in a statute so that a person of average intelligence does not have to guess at its meaning. *Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998). To challenge a statute on grounds of vagueness successfully, the party must be one of the " 'entrapped innocent,' who has not received fair warning." *Reinert*, 348 Ark. at 5, 71 S.W.3d at 54 (citing *Ross v. State*, 347 Ark. 334, 336, 64 S.W.3d 272, 273 (2002)). If a person's conduct clearly falls within what is prohibited, that person cannot complain that the statute is vague. *See id*.

In the present case, Griffin cannot complain that inclusion of the word "immediately" renders the statute vague, as her conduct of purposely delaying making a report to the child–abuse hotline for more than two weeks after acquiring direct knowledge of the child maltreatment clearly did not satisfy the requirement of immediacy that is placed on a mandated reporter. *See id*. Thus, there was substantial evidence to support Griffin's conviction, and we affirm on this point.

In her second point on appeal, Griffin argues that, if the language in Ark. Code Ann. § 12-18-201 is found to be ambiguous with regard to whether a mandated reporter is required to report the abuse of someone who has attained adulthood at the time the reporter acquires this information, the statute must be interpreted in her favor as the criminal defendant under the rule of lenity. However, as discussed under the first point on appeal, the language in Ark.

Code Ann. § 12-18-201 is not ambiguous; thus, there is no doubt or ambiguity to be resolved in favor of Griffin. *See Misenheimer v. State*, 100 Ark. App. 189, 265 S.W.3d 764 (2007). As the State asserts, the rule of lenity is therefore inapplicable. We affirm on this point as well.

In her third point on appeal, Griffin contends that, even if a directed verdict should not have been granted, the circuit court erred in refusing necessary and relevant jury instructions. A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006). A circuit court's decision on whether to give an instruction will not be reversed unless the court abused its discretion. *Id.* Non-model jury instructions should be given only when the trial court finds that the model instructions do not accurately state the law or do not contain a necessary instruction. *Bond v. State*, 374 Ark. 332, 288 S.W.3d 206 (2008).

As Griffin asserts, there was no model jury instruction on the charge of first-degree failure to notify by a mandated reporter. However, the instruction prepared by the State that was accepted by the circuit court and given to the jury tracked the statutory language in Ark. Code Ann. § 12-18-201. Griffin proffered her own instruction, which was identical to the State's except that it added the language, "There is no requirement to report if the reasonable cause to suspect arises after the suspected victim had attained her 18th birthday." The circuit court rejected this instruction on the ground that this proffered language was not contained in the statute.

As was discussed earlier under Griffin's first point on appeal, the plain language in Ark. Code Ann. § 12-18-201 does not state that the victim must be a child at the time the mandated reporter is required to make a report to the hotline. Thus, Griffin's proffered instruction was not a correct statement of the law, and the circuit court did not abuse its discretion by refusing to give it.

Griffin proffered a second jury instruction that was rejected by the circuit court that tracked the language of Ark. Code Ann. § 12-18-306, which, as was discussed earlier in this opinion, concerns the responsibilities of the child–abuse hotline where the victim is an adult. The State objected to this instruction, arguing that this statute was not relevant to the duties of a mandated reporter, and the circuit court agreed. This was not an abuse of discretion, as Griffin was charged with failure to notify as a mandated reporter under Ark. Code Ann. § 12-18-201, and a separate statute setting forth the duties of the child–abuse hotline was not relevant to the jury's determination of Griffin's guilt on this charge. We therefore affirm on this point on appeal.

In her final point on appeal, Griffin contends that the circuit court erred by not allowing her to present exculpatory evidence and by limiting her cross-examination of prosecution witnesses. Circuit courts have broad discretion in deciding evidentiary issues, and their rulings on the admissibility of evidence are not reversed on appeal absent an abuse of discretion. *Laswell v. State*, 2012 Ark. 201, 404 S.W.3d 818.

Griffin sought at trial to admit additional portions of the recorded hotline calls, as well as testimony by Glisson, involving statements made by hotline personnel about their beliefs

11

as to when and from whom the hotline could accept a report when the victim is an adult. These proffered statements were to the effect that the Arkansas Department of Human Services would not conduct an investigation of the allegations unless M.K.S. called in the report herself, due to the fact that she was now an adult. The circuit court excluded this evidence, finding that it was not relevant to the issue of whether Griffin was guilty of violating Ark. Code Ann. § 12-18-201.

Griffin argues that an interpretation of a statute by the agency administering that statute is relevant to whether an offense was committed and that the circuit court abused its discretion in excluding this evidence. However, as the circuit court found, this evidence related to the child-abuse hotline's responsibilities under the statutes governing the hotline and was not relevant to the question of whether Griffin violated Ark. Code Ann. § 12-18-201, the statute under which she was charged. Griffin further contends that this evidence was probative of whether she had the culpable mental state of "knowing" or "reckless" and was thus relevant to the determination of whether she was guilty of first-degree or second-degree failure to report. Again, however, the hotline personnel's opinion and interpretation of a separate statute relating solely to the duties of the child-abuse hotline were not relevant to Griffin's intent, as a mandated reporter, in failing to comply with Ark. Code Ann. § 12-18-201. Thus, the circuit court did not abuse its discretion in ruling that this evidence was inadmissible.

Griffin also argues under this point on appeal that the circuit court abused its discretion in refusing to permit a full cross-examination of Diane Wolfe, the principal of Mount St.

Mary, in regard to a policy of the Catholic Diocese on the sexual abuse of minors. This policy, which was provided to the defense during discovery, contained provisions stating that "[a]s long as the alleged victim is a child at the time when the allegations come to light, all allegations of sexual abuse will be reported[,]" and that "[a]llegations of sexual abuse perpetrated on an alleged victim who is presently no longer a minor, but was a minor at the time of the incident, should be directed to the bishop for appropriate investigation and action, even if the statute of limitations has expired."

Although the circuit court had ruled prior to trial that this evidence would be excluded, Wolfe testified in her direct examination that she had consulted the Diocese website after learning of the allegations, "which pretty much gave us a checklist to follow." Griffin then argued that the prosecution had opened the door to introduce the written Diocese policy, and the circuit court agreed. However, in cross-examination, Wolfe then testified that Mount St. Mary was not governed by the Little Rock Diocese but instead by the Sisters of Mercy. Upon further questioning by the court outside the presence of the jury, Wolfe explained that the Sisters of Mercy did not have a written policy and that she had merely referred to the Diocese website checklist as a resource. The court then ruled that the Diocese policy was inadmissible, although the defense could question Wolfe about the checklist. During further cross-examination, Wolfe testified that she had consulted the Diocese website on March 11, but that she did not actually refer to the written policy of the Diocese on that day. Griffin then proffered the policy as an exhibit.

Griffin contends on appeal that the circuit court's restriction of her cross-examination

13

of Wolfe about the written policy was a "manifest abuse of discretion" under the circumstances, given that Wolfe had asserted that she had examined and followed the policy and that it supported Griffin's interpretation of the statute with which she was charged. Contrary to Griffin's argument, however, Wolfe testified that she did not refer to the written policy on March 11, the day she phoned the hotline. Instead, after further examination by the circuit court, Wolfe made it clear that she had only consulted the checklist on the Diocese website on March 11. Thus, as the State argues, the circuit court did not abuse its discretion in excluding evidence of the policy, as it was irrelevant to the issues at trial. *See Epps v. State*, 72 Ark. App. 370, 38 S.W.3d 899 (2001) (holding that there is no right to cross-examine a witness on irrelevant matters). We therefore affirm on this point on appeal as well.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.